A94A0450. HERRING v. DUNNING.
(446 SE2d 199)

McMURRAY, Presiding Judge.

Plaintiff Janie Herring stopped her automobile in a southbound lane of Interstate 185 near Columbus, Georgia, and successfully avoided a multi-vehicle collision ahead of her which had completely blocked the highway. Nevertheless, Herring was struck from the rear with a vehicle driven by defendant Patrick Dunning. In the ensuing tort action against Dunning, as well as against drivers of the vehicles involved in the initial crash, Herring's counsel of record discussed with Dunning's attorney the possibilities of settlement based upon the extent of Dunning's insurance coverage. When a written release was submitted to Herring, she declined to sign it, claiming that it was too late. Dunning moved to enforce the alleged settlement agreement and the trial court entered judgment on his behalf, awarding him a "Full and Final Release of any liability in this case upon payment of the policy limits of $15,000." This direct appeal followed.

The following undisputed chronology is relevant to the disposition of this appeal: On January 22, 1993, Clay D. Land of the Law Firm of Buchanan & Land, Dunning's attorney, wrote to L. B. Kent, Herring's attorney, and offered to compromise the lawsuit by paying the $15,000 coverage limits of Dunning's automobile liability insurance policy. In return, the defendant would require a complete release of Dunning for any and all liability to Herring. This letter also inquired after the existence of any hospital liens which would need to be extinguished and asserted the need for a release of Dunning as to any potential cross-claims. Without acknowledging the initial defense inquiry, on May 17, 1993, Kent sent to Land a written "offer to settle this case at this time for the limits of your liability insurance policy." This offer, which did not state an amount and invited confirmation of the policy limits, would expire after 15 days. Also on May 17, 1993, Kent sent to Land a separate "offer to settle this case for $15,000."

This offer granted the defendant 30 days to accept or reject the offer. On May 27, 1993, Land wrote to Kent reciting that in a telephone discussion Kent had extended an oral amended offer to settle the case for the policy limits in return for a release of Dunning from any and all liability. The May 27 letter of confirmation did not purport to be an acceptance of this oral amended offer, in that Land would discuss it with his client and respond later. This letter further invited immediate correction by Kent of any misapprehension on the part of Land. The next day, May 28, 1993, Benjamin A. Land of the law firm of Buchanan & Land wrote to "accept your offer to settle the above-referenced case with [Mr.] Dunning for the policy limits of $15,000.00 in exchange for a full and final release of Dunning." It is this purported acceptance that Dunning asked the trial court to enforce. Three weeks later, on June 17, 1993, Benjamin A. Land of the law firm of Buchanan & Land tendered to L. B. Kent a draft in the amount of $15,000 and a proposed written release, with instructions that Kent should return the original release when executed by his client Ms. Herring. By fax communication sent to Benjamin A. Land on June 21, 1993, Kent acknowledged receipt of the proposed release but objected to certain language purporting to release Dunning and hold him harmless for any medical expenses. Stating that "we cannot release anything about Ms. Herring's medical bills," Kent requested of Land that he "[p]lease change the release." On July 23, 1993, Land forwarded a revised release which no longer contained the objectionable language regarding a release of liability for medical bills. By fax, this release was rejected on the ground that Ms. Herring "only agreed to release [Mr.] Dunning if done within the time limit. You did not get her a release in time nor have you got a simple release at the present time."

In further support of his motion to enforce settlement, Dunning proffered the affidavit of Clay D. Land, who authenticated the various communications sent and received and added that L. B. Kent had not returned the draft for the $15,000 despite his letter of July 26, 1993, rejecting the proffered release. In opposition, Kent submitted his own affidavit denying that he had entered into any oral offer and denying that his offer had been properly accepted because the defendant had insisted on additional and material conditions. *Held*:

Plaintiff enumerates as error the trial court's enforcement of a non-existent settlement agreement, contending that no binding contract was ever entered into by the attorneys.

"Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. [Cits.]" *Smith v. Smith*, 36 Ga. 184, 191. In considering the enforceability of an alleged settlement agreement, however, "a trial court is obviously limited to those terms upon which the parties

themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. *Mangum v. Mills*, 108 Ga. App. 535 (133 SE2d 429) (1963); *Manget v. Carlton*, 34 Ga. App. 556 (3) (130 SE 604) (1925). 'It is the duty of courts to construe and enforce *contracts as made*, and not to make them for the parties.' (Emphasis supplied.) *Carr v. L. & N. R. Co.*, 141 Ga. 219, 222 (80 SE 716) (1914)." *King Cotton v. Powers*, 200 Ga. App. 549 (2), 550 (409 SE2d 67). The settlement agreement alleged to have been created in the case sub judice would have been the product of the attorneys for the parties. As the existence of a binding agreement is disputed, the proponent of the settlement must establish its existence in writing. *LeCroy v. Massey*, 185 Ga. App. 828 (366 SE2d 215). See also *Abrams v. Abrams*, 262 Ga. 170 (2) (416 SE2d 88). " 'The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.' [Cit.]" *Stevens v. McCarty*, 198 Ga. App. 412, 413 (1), 414 (401 SE2d 605).

As a preliminary matter, we must decide whether a plaintiff's "offer to settle" an existing lawsuit for his personal injuries "for the limits of liability coverage" is an offer capable of acceptance. " ' "(I)f the offer is in any case so indefinite as to make it impossible for a court to decide just what it means, and to fix the legal liability of the parties, its acceptance can not result in an enforceable agreement." (Cit.)' " *Poulos v. Home Fed. S & L Assn.*, 192 Ga. App. 501, 502 (2) (385 SE2d 135). See also *Manget v. Carlton*, 34 Ga. App. 556, 560 (3), supra. " 'Compromise may be defined as any agreement or arrangement by which, in consideration of mutual concessions, a controversy is terminated. The word applies equally to controversies in court or out of court. Mere abandonment of one's claims is not a compromise, but abandonment may constitute the consideration for which the other party either concedes some right, parts with something, or sustains some loss or inconvenience, in which event a compromise results.' [Cit.]" *Hale v. Lipham*, 61 Ga. App. 191, 193 (6 SE2d 115). Therefore, an offer to compromise is an offer to terminate the controversy. In litigation, "Compromise" is synonymous with "Settlement." See *Parris v. Hightower*, 76 Ga. 631, 633 (2), 634. "Settlement" is defined in part as "an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other." Black's Law Dictionary (4th ed.) "A settlement is an agreement to terminate or forestall all or part of a lawsuit." *Gorman v. Holte*, 211 Cal. Rptr. 34, 37 (Cal. App. 2 Dist. 1985). "The word 'settle' has an established legal meaning and implies a mutual adjustment of accounts between different parties and an agreement upon the balance. [Cit.]" *Sorenson v. Bowen*, 263 P2d 766, 768 (Or. 1953). In the

case sub judice, plaintiff's "offer to settle" contained no express promise to release or discharge the defendant upon tender of the policy limits. Nevertheless, a promise to terminate the controversy or the litigation is a necessary implication to the "offer to settle." It is the quid pro quo. Indeed, that promise is the very definition of an "offer to settle." An implicit contractual provision exists where such provision is necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they apparently deemed it unnecessary to state it. See *Ellis v. Brookwood Park Venture*, 161 Ga. App. 242, 243 (288 SE2d 308). Since the plaintiff's written offer to settle her pending tort claim with the tortfeasor for the limits of the latter's automobile liability coverage necessarily contained her implied promise to execute some instrument terminating the controversy as to that settling defendant, such an offer is sufficiently definite to be capable of acceptance and so to create a mutually binding and enforceable contract. *Poulos v. Home Fed. S & L Assn.*, 192 Ga. App. 501, supra.

The next question is whether defendant properly accepted plaintiff's offer to settle the case for the policy limits so as to create a binding agreement. The letter of May 28, 1993, recites: "We hereby accept your offer to settle the above-referenced case with Patrick John Dunning for the policy limits of $15,000.00 in exchange for a full and final release of Dunning." This letter contains an additional paragraph which states defense counsel's "understanding that no liens of any kind exist in this case. Please confirm this at your earliest convenience." Plaintiff contends that this writing is ineffective as an acceptance because the reference to a release imports a material variance to the offer to settle. We disagree.

" 'An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer.' *Monk v. McDaniel*, 116 Ga. 108 (3) (42 SE 360). To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. . . ." *Anderson, Clayton & Co. v. Mangham*, 32 Ga. App. 152, 156 (123 SE 159). A purported acceptance of a plaintiff's settlement offer which imposes conditions or attempts to release parties other than the named defendant-offeree will be construed as a counteroffer to the offer to settle for the policy limits. *Johnson v. Martin*, 142 Ga. App. 311 (235 SE2d 728).

In the case sub judice, the plaintiff's offer to settle for the policy limits is silent as to the particular form by which she has impliedly promised that she will terminate the controversy with the defendant. The form of that termination could be a release of the settling tortfeasor and his insurer, a dismissal of the action as to him, a covenant not to sue, or an express accord and satisfaction of the disputed claim. Defendant's reply contains an unequivocal acceptance of plain-

tiff's "offer to settle for the policy limits of $15,000.00 in exchange for a full and final release" of Dunning himself. It is true that defendant made the initial suggestion that the form by which the controversy shall be terminated should be a release. Contrary to plaintiff's assertions, however, the bare fact that this acceptance of her "offer to settle" suggested one form of terminating the controversy over another does not render such acceptance a counteroffer which rejects the plaintiff's offer. Rather, this is a valid acceptance with the suggested choice for terminating the controversy being merely precatory. "Precatory words are words 'whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction.' [Cit.]" *Raines v. Duskin*, 247 Ga. 512, 523 (277 SE2d 26). Similarly, the inquiry about the non-existence of hospital liens does not condition defendant's earlier acceptance but is a mere premise which invites confirmation. The letter of May 28, 1993, was an unequivocal and unconditional acceptance of plaintiff's written offer to settle.

Plaintiff further argues that acceptance was untimely because performance was not tendered until July 21, 1993, well after either the 15-day period allowed in her first written offer of May 17, 1993, or the 30-day period allowed pursuant to her second written offer of May 17, 1993. In this regard, the second offer expressly stated: "You have thirty (30) days in which to accept or reject this offer from the date of this letter." Neither offer specifies the manner in which that offer must be accepted or the manner in which that acceptance is to be communicated to the plaintiff-offeror.

"An offer may be accepted, however, either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." *Sheffield v. Whitfield*, 6 Ga. App. 762, 764 (2) (65 SE 807). "If an offer is made by letter, an acceptance by written reply takes effect from the time it is sent and not from the time it is received; hence, withdrawal of the offer by the offeror after that time is ineffective. If an offer contains alternative propositions, the party receiving the offer may elect between the alternative propositions." OCGA § 13-3-3. Since plaintiff's offer contained no specified manner of acceptance, defendant's counsel was entitled to accept by mailing the insurer's promise to pay the policy limits in exchange for a full release of its insured, the defendant. The letter of May 28, 1993, accomplished this within the 30-day period extended by the second offer, creating a binding agreement upon mailing. From that moment on, the presentation of a proper release in a form acceptable to plaintiff may have been a condition of defendant's performance but it was not an act necessary to acceptance of plaintiff's offer to settle for the policy limits. Moreover, since

the agreement to terminate the controversy already had been created, the defendant's subsequent proffer of a release form which plaintiff believed was not in compliance with the understanding of the parties would not be a rejection of the previously accepted offer. *Greene v. Colonial Stores*, 144 Ga. App. 645, 646 (2), 647 (242 SE2d 489). Compare *Johnson v. Martin*, 142 Ga. App. 311, supra. Rather, plaintiff herself would have a right of action for an alleged breach of the existing settlement agreement. See *Kimbell v. Moreland*, 55 Ga. 164 (1); OCGA § 13-3-4. The evidence of record establishes that plaintiff's attorney made a written offer of settlement to defendant's attorney and that defendant's attorney accepted the offer as evinced by the correspondence of both attorneys. *Crystal Cubes of Stone Mountain v. Kutz*, 201 Ga. App. 338, 340 (3) (411 SE2d 53). The trial court correctly granted defendant's motion to enforce settlement.

*Judgment affirmed. Birdsong, P. J., Andrews, Johnson, Blackburn, JJ., and Senior Appellate Judge Harold R. Banke concur. Pope, C. J., Beasley, P. J., and Smith, J., dissent.*

Pope, Chief Judge, dissenting.

I dissent. In my opinion the facts here establish only that the parties' attorneys were engaged in on-going settlement negotiations, with a series of offers and counteroffers going back and forth between them. Part of these negotiations concerned the manner and to what extent defendant would be released from liability to plaintiff. An agreement as to the terms of that release was not reached within the time specified by plaintiff's attorney for acceptance of the offer. Inasmuch as there was no meeting of the minds concerning the essential terms of the settlement agreement within the specified time, no enforceable agreement existed between the parties. See *Grossman v. Smith, Barney Real Estate Fund*, 211 Ga. App. 243 (438 SE2d 700) (1993) (physical precedent only). I would thus reverse the judgment of the trial court.

I am authorized to state that Presiding Judge Beasley joins in this dissent.

DECIDED JUNE 10, 1994 —
RECONSIDERATION DENIED JUNE 29, 1994 —

*L. B. Kent*, for appellant.
*Buchanan & Land, Benjamin A. Land, Clay D. Land, Divine, Wilkin, Raulerson & Fields, Richard W. Fields, Self, Mullins & Robinson, Ronald W. Self, Layfield, Rothschild & Morgan, W. Don-*

*ald Morgan, Jr.,* for appellees.