S05G1935. FRICKEY v. JONES.
(630 SE2d 374)

THOMPSON, Justice.

We granted a writ of certiorari to the Court of Appeals in *Jones v. Frickey*, 274 Ga. App. 398 (618 SE2d 29) (2005) to consider whether that court erred in ruling that the evidence of record failed to establish the existence and terms of an enforceable settlement agreement. For the reasons which follow, we affirm.

In July 2001 appellant Rocky J. Frickey, Jr. caused a motor vehicle collision which seriously injured appellee Keith Jones. On three different occasions in 2002, Frickey's liability insurer, State Farm Mutual Automobile Insurance Company, wrote to Jones' attorney requesting information as to Jones' medical records so that State Farm could tender its policy limit of $100,000; Jones' attorney did not respond to this correspondence. In April 2003 State Farm reaffirmed its desire to settle the case.

On June 18, 2003, Jones' attorney sent State Farm a demand letter, stating that he had authority from his client to settle all claims against Frickey and State Farm for the policy limit of $100,000. The letter further stated: "if no response is received within five (5) days of this letter, this offer to settle . . . will be automatically withdrawn according to its terms." State Farm responded by facsimile dated June 25, 2003 (with a copy sent by certified mail), stating its willingness to tender $100,000 as full settlement of all claims, "upon receipt of the fully executed release enclosed. Obviously, payment is complicated by what appears to be a Grady Hospital lien as well as potential liens by your client's health carrier. Please advise me of the status of these liens."[1]

The next correspondence was a letter from Jones' attorney dated July 7, 2003, enclosing a copy of a complaint that had been filed against Frickey on June 27, 2003 (one week before the statute of limitation would have expired). That letter also informed State Farm that "we are still in the process of negotiating the claim of lien that

---

[1] Jones concedes that the letter dated June 25, 2003 was timely under his five-day demand.

has been filed [by Jones' healthcare provider]. We anticipate being able to resolve the lien matter very soon. . . . Upon resolution of the lien matter and State Farm tendering the policy limits, we will promptly file a dismissal."

Three months later, Jones' attorney advised State Farm by letter that the offer to settle was withdrawn for the reason that

> State Farm Insurance Company has refused to tender the policy limits available without putting certain conditions on the settlement, including suggesting that our client execute a release *prior to the receipt of settlement funds*, effectively settling all claims against your insured. State Farm has indicated they would not tender the settlement check until all potential liens or claims for reimbursement have been resolved with insurance companies that have provided benefits to my client.

Several weeks following Jones' withdrawal of the offer to settle, State Farm tendered a check to him for $100,000. Correspondence continued between the parties, but Jones' attorney adhered to his position that the offer to settle had been withdrawn. In one such letter, State Farm characterized the substance of its response to Jones' offer to settle, as follows: "State Farm offered to tender the policy limits of $100,000 to your client *in June 2003 if you were able to resolve the Grady Hospital lien as well as potential liens by your client's health carriers.*" (Emphasis supplied.)

Frickey filed a motion to enforce the alleged settlement agreement which the trial court granted based on the finding that Jones' offer on June 18, 2003 and State Farm's response thereto on June 25, 2003 formed a binding agreement to settle. The Court of Appeals reversed, finding that the evidence failed to establish the existence and terms of an enforceable agreement.

> An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. [Cit.] To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. . . . [Cit.] A purported acceptance of a plaintiff's settlement offer which imposes conditions . . . will be construed as a counter-offer to the offer to settle for the policy limits. [Cit.]

(Punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 698 (446 SE2d 199) (1994). In *Herring*, a plaintiff injured in a motor vehicle accident extended a written offer to settle his claim for the

limits of the defendant's liability insurance policy. Defendant accepted the offer to settle for the policy limits and a full and final release. The acceptance letter also expressed the "understanding that no liens of any kind exist in this case. Please confirm this at your earliest convenience." When a written release was submitted, plaintiff refused to sign it. The trial court granted defendant's motion to enforce the alleged settlement agreement, and the Court of Appeals affirmed. Although plaintiff argued that the letter of acceptance being conditioned on additional factors constituted a material variance to the offer, the court held that the agreement was enforceable; that the additional language concerning a release was precatory, meaning a recommendation, not a condition; and that the inquiry concerning the non-existence of any liens, was "a mere premise which invites confirmation." Id. at 699.

Although Frickey submits that this case is controlled in his favor by *Herring,* a critical distinguishing factor exists. Here State Farm's June 25, 2003 letter did not purport to accept Jones' offer " 'unequivocally and without variance of any sort.' " Id. at 698. Instead, it imposed an added condition, not merely to "confirm" the nonexistence of any outstanding liens as in *Herring,* but to "*resolve the Grady Hospital lien as well as potential liens by your client's health carriers.*" (State Farm's own language characterizing the content of its June 25, 2003 letter.)

> In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent.

*Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.,* 250 Ga. 391, 395 (297 SE2d 733) (1982). In making that determination, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence. See, 1 Williston on Contracts, § 21; 3 Corbin on Contracts, §§ 106, 577." *Cox Broadcasting,* supra at 395. Under the facts of this case, State Farm's response to Jones' offer required an additional act necessary to acceptance of Jones' offer to settle for the policy limits — the *resolution* of all actual and potential liens of the health care providers. See generally *Douglas v. Austin-Western Road Machinery Co.,* 180 Ga. 29, 32 (1) (177 SE 912) (1934) ("An offer may contemplate acceptance by the doing of an act, and if the act be performed while the offer is in life, a binding contract is created, so far

as the question of mutuality is concerned."). As such, the June 25, 2003 letter constituted a counteroffer and no binding agreement was formed.[2]

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., not participating.*

DECIDED MAY 17, 2006 —
RECONSIDERATION DENIED JUNE 12, 2006.

*Harper, Waldon & Craig, Thomas D. Harper, James A. Neuberger*, for appellant.

*Edenfield, Cox, Bruce & Classens, Gerald M. Edenfield, Susan W. Cox, Charles P. Aaron*, for appellee.

---

[2] We do not suggest, however, that the mere request for confirmation that no liens exist renders an "acceptance a counteroffer which rejects the plaintiff's offer." *Herring*, supra at 699.