### A08A0205. MEALER v. KENNEDY.
(659 SE2d 809)

BLACKBURN, Presiding Judge.

In a negligence case arising from a motor vehicle collision, we granted Beverly Mealer's application seeking interlocutory review of the denial of her motion to enforce a settlement agreement with Alex Kennedy. Because the trial court erred in concluding that Mealer and Kennedy had not reached a settlement agreement, we reverse.

"A trial court's order on a motion to enforce a settlement agreement based on undisputed facts is subject to de novo review." *Anaya v. Coello*.[1] The undisputed record shows that while Kennedy was riding his motorcycle on July 22, 2006, he was injured in a collision with a car driven by Mealer. On August 10, 2006, Mealer's insurance carrier, Progressive Insurance Company ("Progressive"), sent a letter to Kennedy's attorney at the time, offering the policy limits of $25,000

---

[1] *Anaya v. Coello*, 279 Ga. App. 578, 579 (632 SE2d 425) (2006).

per person in exchange for either (1) a full and final release or (2) a limited liability agreement accompanied by a waiver of subrogation from any uninsured/underinsured motorist (UM) carriers. The offer was also inclusive of any hospital liens, known or unknown.

On September 19, 2006, Progressive was notified that Kennedy's attorney had been replaced by new counsel. The new counsel, rather than responding directly to Progressive's offer of its policy limits, of which he had knowledge, sent on October 4, 2006, a letter to Progressive "demanding the policy limits to settle this case for the sum of [$25,000], which Progressive has represented is the limit of their available insurance." The demand further provided that it expired on October 13, 2006, with no other terms being specified. The new attorney refused to communicate with Progressive except in writing. On October 5, 2006, Progressive responded in writing that it had previously offered to settle for the policy limits and attached the original August 10 letter memorializing the offer. Kennedy's attorney faxed a response the same day, stating,

> I received [Progressive's] faxed letter of today's date accepting our demand for policy limits of $25,000. . . . As you are aware, the limited release is necessary to allow [Kennedy] to recover available underinsured motorist benefits.

Thus, having received Progressive's letter, he attempted to couch the arrangement as Progressive having accepted his demand, rather than the plaintiff having accepted Progressive's offer which was on the table before this attorney was in the case. As shown by Kennedy's written offer, and as conceded by Kennedy's attorney at oral argument, Kennedy's attorney sought through the tactics discussed herein to put Progressive in an excess posture as to any verdict in excess of the policy limits.

On October 9, 2006, Progressive responded in writing, confirming that its "offer was inclusive of any liens," and requested Kennedy to execute an enclosed "Affidavit of No Lien" to confirm the representation that no liens existed. Progressive also requested contact information for Kennedy's UM carriers and an extension of time so that it could pursue a waiver of subrogation from the relevant UM carriers.

The next day, Progressive faxed Kennedy's attorney a copy of a proposed limited liability release agreement containing an indemnification in favor of Mealer and Progressive should either be sued in breach of the release agreement. That same day, Kennedy's attorney faxed a response to the October 9 letter, declining the time extension and stating that neither he nor his client had received notice of any lien or claim of lien.

On October 11, 2006, Progressive responded by facsimile, explaining that it had requested the UM carrier information so that Progressive "can request that each carrier agree to waive their subrogation rights. . . . For this reason, I again respectfully request that you grant an extension of your demand and identify all possible UM carriers." The letter further stated, "I have already provided you with a proposed Limited Liability Release and Affidavit of No Lien for your review." Separately, that same day, Progressive faxed and mailed to Kennedy's attorney a letter providing notice of its payment, with a check for $25,000 to the attorney's trust account. The letter stated that "it is understood that the enclosed Limited Liability Release form will be signed and . . . I also request [that] Mr. Kennedy execute the enclosed Affidavit of No Lien."

On October 30, 2006, Kennedy's attorney sent Progressive a letter stating that due to Progressive's alleged failure to unconditionally accept his demand for the policy limits, the attorney believed that Progressive acted negligently and in bad faith; accordingly, the attorney enclosed a copy of a complaint which Kennedy had already filed against Mealer ten days earlier.

Mealer moved to enforce the settlement agreement it contended existed between the parties. After the trial court denied the motion and issued a certificate of immediate review, Mealer applied for interlocutory review, which this Court granted.

> Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. The settlement agreement alleged to have been created in this case would have been the product of the attorneys for the parties. As the existence of a binding agreement is disputed, [Mealer,] the proponent of the settlement[,] must establish its existence in writing. The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.

(Punctuation omitted.) *Pourreza v. Teel Appraisals & Advisory.*[2]

Here, Mealer points to the October 5 letter from Kennedy's attorney which notes his receipt of Progressive's "faxed letter of today's date *accepting our demand* for policy limits of $25,000." (Emphasis supplied.) In the October 5 letter, Kennedy's attorney also requested that the settlement be in the form of a limited release in light of Kennedy's intention to pursue UM claims. Nothing was inconsistent with Progressive's intended settlement or its subsequent correspondence.

In response, Kennedy contends that no agreement existed, arguing that "[t]o constitute a contract, the offer must be accepted unequivocally and without variance of any sort." (Punctuation omitted.) *Herring v. Dunning.*[3] Kennedy asserts that (1) Progressive's subsequent request for execution of the No Lien Affidavit was an additional condition that rendered Progressive's response a counteroffer, (2) Progressive required Kennedy himself to obtain subrogation waivers from his UM carrier, and (3) an indemnity provision in the limited liability release form was objectionable and therefore at variance with his offer.[4]

At the outset, it is important to note that *Kennedy's own attorney stated that Progressive's October 5 letter was an acceptance of* "our demand for policy limits," which did not provide specific terms nor a specific manner of acceptance. Moreover, in that letter, Kennedy's attorney indicated his choice of a limited release — an option explicitly proposed by Progressive's letter. Thus, it is clear that Kennedy's attorney acknowledged acceptance of his nonspecific offer after being made aware of the terms contemplated by Progressive (i.e., UM waivers and inclusion of hospital liens). This written exchange created a binding agreement. We emphasize that this is not a case where Kennedy's attorney simply made a general demand and waited for an unequivocal and nonvarying acceptance by Progressive. Nor do we suggest that the first party to make an offer trumps any subsequent counteroffer. Instead, the facts here are that Kennedy's attorney characterized Progressive's response to his demand (including Progressive's basic terms) as an *acceptance* of his generalized demand and indicated his preference for the type of settlement, in accordance with the terms in Progressive's October 5 and August 10 letters. Compare *Wyatt v. House*[5] (no settlement agreement where insurer responded to settlement demand by writing "[y]ou requested

[2] *Pourreza v. Teel Appraisals & Advisory*, 273 Ga. App. 880, 882-883 (616 SE2d 108) (2005).

[3] *Herring v. Dunning*, 213 Ga. App. 695, 698 (446 SE2d 199) (1994).

[4] The indemnity merely addressed claims filed in breach of the release itself and does not appear to be an attempt to overreach on the part of Progressive.

[5] *Wyatt v. House*, 287 Ga. App. 739, 741 (3) (652 SE2d 627) (2007).

settlement with a Limited release; however, we feel our insured is better protected with a Release in Full.") (punctuation omitted).

Further, with respect to the No Lien Affidavit, Kennedy's attorney had already stated that neither he nor Kennedy were aware of any liens, so Progressive's proffering the affidavit and requesting that it be signed was merely an attempt to memorialize this understanding. See *Frickey v. Jones*[6] (the mere confirmation that no liens exist does not render an acceptance a counteroffer which rejects the plaintiff's offer). With respect to the alleged requirement to obtain a subrogation waiver, Kennedy misstates the record, which demonstrates only that Progressive simply requested the identity of the UM carriers so that it could communicate with them itself. Finally, with respect to Kennedy's objection to the indemnity provision in the proposed release, "since the agreement to terminate the controversy already had been created, the defendant's subsequent proffer of a release form which plaintiff believed was not in compliance with the understanding of the parties would not be a rejection of the previously accepted offer." *Herring*, supra, 213 Ga. App. at 699-700.

Kennedy compares this case to *Frickey*, supra, 280 Ga. at 573, which addressed a scenario where the insurer responded to a time-limited demand for policy limits by stating its willingness to tender the policy limits "upon receipt of the fully executed release enclosed," and by stating, "[o]bviously, payment is complicated by what appears to be a Grady Hospital lien as well as potential liens by your client's health carrier. Please advise me of the status of these liens." (Punctuation omitted.) No further settlement discussions ensued. The Supreme Court of Georgia ruled that the insurer's purported acceptance varied from the offer as it "required an additional act necessary to acceptance of [plaintiff's] offer to settle for the policy limits — the *resolution* of all actual and potential liens of the health care providers." (Emphasis in original.) Id. at 575. Therefore, the Supreme Court ruled that the purported acceptance did not create an enforceable agreement.[7]

*Frickey* is distinct from the present scenario for at least three reasons: (1) Kennedy's attorney himself stated that Progressive's response was an acceptance of his demand, (2) Progressive's payment was not conditioned on Kennedy's prior resolution of any existing or potential liens, and (3) Progressive actually tendered timely payment of the policy limit as demanded by Kennedy. We emphasize that

---

[6] *Frickey v. Jones*, 280 Ga. 573, 576, n. 2 (630 SE2d 374) (2006).

[7] The Supreme Court of Georgia distinguished *Frickey* from *Herring*, noting that merely confirming the nonexistence of liens does not create a counteroffer. *Frickey*, supra, 280 Ga. at 576, n. 2.

Kennedy's attorney himself, after receiving Progressive's original offer (inclusive of liens and contemplating that Progressive would obtain waivers from UM carriers), wrote to Progressive characterizing Progressive's response as an *acceptance* of his nonspecific demand for the policy limits. After Progressive inquired about liens and the identity of UM carriers and sent a proposed settlement form, Kennedy's attorney did not object to either and simply stated that he was not aware of any liens. Only after Progressive tendered timely payment did Kennedy's attorney refuse to terminate the controversy. This refusal, in and of itself, did not obviate the prior agreement to settle, and once Kennedy's attorney acknowledged that Progressive had accepted his demand to settle, "the presentation of a proper release in a form acceptable to plaintiff may have been a condition of defendant's performance but it was not an act necessary to acceptance of plaintiff's offer to settle for the policy limits." *Herring*, supra, 213 Ga. App. at 699. See also *Capitol Materials v. Kellogg & Kimsey, Inc.*[8] (that the form of lien releases had not been negotiated did not render an alleged agreement incomplete); *Pourreza*, supra, 273 Ga. App. at 883 ("the drafting of documents necessary to effectuate the settlement may have been a condition of the performance but it was not an act necessary to acceptance of the offer to settle") (punctuation omitted).

In light of the prior agreement to settle, the trial court erred in denying Mealer's motion to enforce the settlement agreement. We therefore reverse.

*Judgment reversed. Miller and Ellington, JJ., concur.*

DECIDED MARCH 21, 2008.

Downey & Cleveland, James T. Ponton, Joseph C. Parker, for appellant.
Lloyd N. Bell, for appellee.

---

[8] *Capitol Materials v. Kellogg & Kimsey, Inc.*, 242 Ga. App. 584, 586 (3) (530 SE2d 488) (2000).