### A10A1147. BALDWIN v. ADAMS.
(701 SE2d 577)

ELLINGTON, Judge.

In a negligence action arising from a motor vehicle collision, we granted Robert Baldwin's application seeking interlocutory review of the denial of his motion to enforce a settlement agreement with John Adams. Because the trial court erred in concluding that Baldwin and Adams had not reached a settlement agreement, we reverse.

"A trial court's order on a motion to enforce a settlement agreement based on undisputed facts is subject to de novo review." (Citation and punctuation omitted.) *Mealer v. Kennedy*, 290 Ga. App. 432 (659 SE2d 809) (2008). The undisputed record evidence shows that, on August 3, 2005, Baldwin and Adams were involved in an automobile accident in which Adams, a passenger in one of the vehicles, sustained injuries. Adams originally sued Baldwin in Carroll County, dismissed the case without prejudice after an unsuccessful effort at mediation, and then re-filed in Cobb County on November 15, 2008. Before perfecting service of the re-filed complaint, Adams' attorney sent Baldwin's attorney a letter dated January 16, 2009, stating: "I am authorized to say that if your client will offer $17,500.00 in settlement of the case, my client, John Adams, will accept it." On January 27, 2009, Baldwin's attorney responded with an e-mail stating that he had "received authority in the amount of $17,500.00," that the "case is settled" for that amount, and that a check would be sent "along with the release documents." Adams' attorney responded: "OK." On February 2, 2009, Baldwin's attorney sent Adams' attorney a letter formally acknowledging the settlement agreement, a check for $17,500, a general release, a dismissal with prejudice, and a medical lien affidavit. On March 11, 2009, Adams' attorney sent letters to Adams' medical providers informing them that the case had been settled for $17,500 and that, after fees and expenses, Adams had limited funds to pay his remaining medical bills. Adams' attorney sought proposed payment reductions, and obtained at least one. It is patent from the record that Adams' attorney was aware that the settlement funds would be insufficient to cover Adams' existing debts and that he had, in fact, advised Adams to begin making payments to at least one provider.

When the settlement documents were not timely signed and returned, Baldwin's attorney asked for an update. Adams' attorney responded: "Mr. Adams has not yet signed the settlement docu-

ments. We have had several telephone conversations with him since you sent us the documents. We have requested that he sign them as soon as possible to avoid a motion to enforce the settlement." On March 24, 2009, Baldwin's attorney received a letter from Adams indicating that he would not sign the settlement documents. Baldwin's attorney forwarded the letter to Adams' attorney, commenting that it appeared that "Adams [was] trying to back out of the settlement." Adams' attorney responded, stating that "you may have to file a motion to enforce the settlement," that he "would not be in a position to oppose such a motion," and that Adams had "specifically authorized $17,500.00." In a letter dated May 11, 2009, Adams' attorney informed his client: "I settled your case. I followed the directives you instructed me to do. Subsequently, we sent you the release and settlement documents for you to sign. . . . Under Georgia law when an attorney settles a case based upon express authorization of the client the settlement is effective."

After Baldwin filed the motion to enforce the settlement, which was unopposed, Adams wrote the court, explaining that his attorney asked him "if he could approach [Baldwin's attorney] with an offer of $17,500.00." Adams contended that he "agreed to that amount only to see if they were willing to come up from $15,000.00. [But he] never said [he] would settle [for] $17,500.00." Following a hearing which was not transcribed, the court issued an order finding that, even if Adams did not mean to authorize a settlement, "from an objective perspective, that [was] the clear import of [his] statement." Although the court concluded that Adams' attorney had the authority to settle, the court declined to enforce the settlement agreement. Even though the issue had not been raised or briefed by counsel for either party, the court found that Baldwin's attorney's inclusion of the release and medical lien affidavit imposed additional terms and was, therefore, not an acceptance of Adams' offer to settle, but a counteroffer.

As we have held:

> Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. The settlement agreement alleged to have been created in this case would have been the product of the attorneys for

the parties. . . . The writing which will [create an enforceable settlement agreement] ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.

(Citation omitted.) *Mealer v. Kennedy*, 290 Ga. App. at 434.

The record in this case consists of writings by the attorneys memorializing an agreement to settle the case for $17,500. Adams' attorney did not contest the motion to enforce the settlement agreement, and there is no evidence in the record suggesting that he considered the inclusion of a general release and medical lien affidavit as a counteroffer. To the contrary, he accepted the documents and passed them on to Adams to sign while he began negotiations with Adams' medical providers, attempting to reduce those bills in light of what he expressly characterized as a final settlement. There is nothing in Adams' attorney's conduct that suggests anything other than an understanding that the case was settled on mutually satisfactory terms. Moreover, even if the inclusion of the release documents could be construed as a counteroffer under the facts of this case, Adams' attorney accepted it with his written "OK" and subsequent behavior. As we explained in *Mealer v. Kennedy*, which is factually similar to this case, while the execution of settlement documents may have been a condition of the defendant's insurer's performance under the settlement agreement, it was not an act necessary to the acceptance of the offer to settle. Id. at 437. Therefore, in light of the agreement to settle, the state court erred in denying Baldwin's motion to enforce the settlement agreement. Therefore, we must reverse.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

DECIDED SEPTEMBER 16, 2010.

*Cruser & Mitchell, Evan R. Mermelstein*, for appellant.
*Brian K. Panessa*, for appellee.