**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 28, 2013**

# In the Court of Appeals of Georgia

A12A2534. TURNER v. WILLIAMSON et al.

BOGGS, Judge.

Following a jury verdict against him in this wrongful death action, Dylan Turner appeals, contending that the trial court erred by denying his motion to enforce a policy limits settlement in the amount of $25,000. For the reasons explained below, we reverse.

"A trial court's order on a motion to enforce a settlement agreement based on undisputed facts is subject to de novo review." (Citation and footnote omitted.) *Mealer v. Kennedy*, 290 Ga. App. 432 (659 SE2d 809) (2008). In this case, the undisputed facts show that 15-year-old Zachary Williamson died on August 14, 2010, when Turner's vehicle crossed the center line and collided with a vehicle in which Williamson was a passenger. On December 8, 2010, a claims handler with Turner's

insurer, USAA Casualty Insurance Company ("USAA CIC"), sent a letter to Williamson's parents at their home address, "offering [Turner's] bodily injury liability limits of $25,000" and indicating, "I need you to sign the attach[ed] release and a copy of the death certificate before payment can be issued." A two-page form titled "Georgia Limited Release Pursuant to O.C.G.A. Section 33-24-41.1"[1] was attached to the letter. In addition to the language required by OCGA § 33-24-41.1, the release also included the following provisions:

> IT BEING FURTHER AGREED AND UNDERSTOOD that this settlement is a compromise of a disputed claim and that the payment is not to be construed as an admission on the part of the party or parties hereby released of any liability whatsoever in consequence of said accident.

> The claimant(s) warrant and represent to the insurer that there are no medical or hospital liens, or expenses for which the Releasees may be held liable under O.C.G.A. § 44-14-470 (et seq.), or under O.C.G.A. § 49-4-148 or 49-4-149 or any other law or statute; but in the event any claims are asserted against the insurer for such medical expenses by any person, firm, or corporation, authority, governmental agency or other entity on account of any hospital or medical treatment rendered to the claimant by reason of the incident referred to herein, the claimant(s) will

---

[1] This code section provides for a limited release when a motor vehicle accident is covered by two or more insurance carriers.

hold harmless, defend and indemnify the insurer from all such claims and for any amounts the insurer is required to pay therein, including any and all attorney fees incurred in the defense of the insurer against said claims.

The claims handler did not receive a response from the Williamsons until January 4, 2011, when the Williamsons' attorney sent USAA CIC a letter stating in its entirety: "My clients, Mark and Renee Williamson, have authorized me to make a demand in this. My clients will execute a limited liability release in accordance with O.C.G.A. § 33-24-41.1 in exchange for USAA's policy limits of $25,000. This offer shall remain open until Friday, January 14, 2011."

On January 13, 2011, the claims handler called the Williamsons' attorney but was unable to speak with him. She advised the attorney's secretary that "the same offer had been extended by USAA CIC on December 8, 2010" and told her that "this was acceptable to USAA CIC and that I would issue the check to the estate and send a Limited Liability Release for the clients' signature." In the claims handler's opinion, a settlement had then been reached. On the same date, she sent two letters to the attorney regarding the settlement. In one letter, she wrote:

I am in receipt of your letter of 1/4/2011, wherein you demand our insured's policy limits. Please be advised that USAA offered our

insured's policy limits of $25,000 to your clients back on 12/8/10. Please be advise[d] that I will be issuing the check and release to the Estate of Zachary Williamson and your law firm unless you advise differently. Please also, fax a copy of the death certificate. You may submit correspondence or questions to me.

In the second letter, she confirmed that the parties had "settled the claim." She requested that his clients "please" sign the included release form in front of witnesses and return it, along with the attorney's tax identification number for reporting purposes. The included release was identical to the one previously sent by the claims handler directly to the Williamsons on December 8, 2010.

On January 21, 2011, the Williamsons' attorney wrote to the claims handler and informed her, "I received your letter dated January 13, 2011. I have discussed the contents of your letter with my clients, as well as the Release. My clients have instructed me to reject your counteroffer. If you have any questions regarding the foregoing, call me." The claims handler received this letter on February 1, 2011. On the same day, the claims handler sent another letter to Cooper confirming that they

had "reached an amicable resolution" of the claim which included a different more abbreviated release that made no reference to OCGA § 33-24-41.1.[2]

The claims handler made repeated attempts to speak with the attorney by telephone about the settlement, but was unsuccessful until February 25, 2011, 10 days after Turner had been served with a lawsuit filed by the Williamsons. In this conversation, the attorney informed the claims handler for the first time that "a settlement had not been reached because a limited liability release had not been sent to his clients, but instead a 'final' release had been sent." He also informed her "that suit had been filed and the case was to be litigated."

Turner subsequently filed a motion to enforce the parties' settlement agreement, which the trial court denied. In its order, the court concluded that there had been "no meeting of the minds as to all essential terms," and therefore no enforceable agreement existed.

On appeal, Turner contends that a settlement agreement was reached between the parties either (1) when the attorney's January 4, 2011 letter accepted USAA CIC's December 8, 2010 offer or (2) USAA CIC's accepted the Williamsons' January 4,

---

[2] This release appears to have errors as it required the insured, Dylan Turner, to sign it in exchange for payment of $25,000 due to him under the policy.

2011 offer on January 13, 2011. According to Turner, the terms of the release were a payment of $25,000 and execution of a limited liability release. The Williamsons respond that they did not agree to sign the release provided by USAA CIC that included provisions denying the liability of the driver "who killed their son" as well as indemnification for medical and hospital liens and any attorney fees and litigation costs incurred by USAA CIC.

> In deciding whether the parties entered into an enforceable settlement agreement, we are governed by well-established principles. Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties.

(Citation and punctuation omitted.) *Hearn v. Dollar Rent A Car*, 315 Ga. App. 164 (726 SE2d 661) (2012). "[S]ettlement agreements must meet the same requirements of formation as other contracts." (Citation and footnote omitted.) *Torres v. Elkin*, 317 Ga. App. 135, 141 (2) (730 SE2d 518) (2012).

6

An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. A purported acceptance of a plaintiff's settlement offer which imposes conditions will be construed as a counter-offer to the offer to settle for the insurance policy limits.

(Citation and punctuation omitted.) *Frickey v. Jones*, 280 Ga. 573, 574 (630 SE2d 374) (2006). See also *McReynolds v. Krebs*, 290 Ga. 850, 853 (2) (725 SE2d 584) (2012). When determining whether a purported acceptance imposes conditions rendering it a counter-offer, our courts have drawn a distinction for "precatory words." See *Torres*, supra, 317 Ga. App. at 141 (2); *Porreza v. Teel Appraisals & Advisory*, 273 Ga. App. 880, 883 (616 SE2d 108) (2005); *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). "Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than mandatory direction." (Citation and punctuation omitted.) *Herring*, supra.

1. Applying these principles to the facts before us, we conclude that the attorney's January 4th letter did not accept USAA CIC's December 8th offer. The offer conditioned acceptance upon receipt of the executed release form provided with the offer letter. While the release may have been titled "Georgia Limited Release

7

Pursuant to OCGA § 33-24-41.1," it contained additional substantive provisions not related to that statute. Additionally, the offer letter did not characterize the contents or subject of the release in any way. Therefore, the January 4th letter proposing a settlement based upon execution of a limited liability release under the statute in exchange for the $25,000 policy limits cannot be construed as an unequivocal acceptance of all of the terms of the December 8th offer because it did not contain identical terms.

2. This is not the end of our inquiry, however, as we must now consider whether USAA CIC accepted the Williamsons' January 4th offer. The terms of this offer were simple: execution of a limited liability release in accordance with OCGA § 33-24-41.1 in exchange for the policy limits. The claims handler's written and oral communications in response demonstrate an unequivocal acceptance of both of these terms and they contained no language conditioning acceptance upon execution of the particular release form she provided with her second letter.[3] While the release provided may have included additional terms not acceptable to the Williamsons, it is well-settled that the mere inclusion of a release form unacceptable to the plaintiff

---

[3] The second letter enclosing the release requested that the client "please" sign the release and noted that the check for $25,000 would be sent "under separate cover." The first letter merely advised that a release would be issued.

8

does not alter the fact that a meeting of the minds had occurred with regard to the terms of the settlement. See *Smith v. Hall*, 311 Ga. App. 99, 101-102 (714 SE2d 742) (2011); *Baldwin v. Adams*, 306 Ga. App. 104, 105 (701 SE2d 577) (2010); *Mealer v. Kennedy*, 290 Ga. App. 432, 436-437 (659 SE2d 809) (2008); *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). Compare *McReynolds*, supra, 290 Ga. at 853-854 (2) (purported acceptance letter imposed additional condition of lien resolution as part of settlement); *Frickey v. Jones*, 280 Ga. 573, 575-576 (630 SE2d 374) (2006) (purported acceptance letter conditioned settlement upon resolution of medical liens not mentioned in offer); *Torres*, supra, 317 Ga. App. at 142-143 (2) (acceptance letter included conditional language requiring satisfaction of liens); *Anderson v. Benton*, 295 Ga. App. 851, 855 (1) (673 SE2d 338) (2009) (purported acceptance expressly contingent upon execution of included release as part of settlement ); *Wyatt v. House*, 287 Ga. App. 739, 741-742 (3) (652 SE2d 627) (2007) (purported acceptance expressly required release that varied from release specified in offer), overruled on other grounds, *Ragan v. Mallow*, Ga. App. (Case No A12A1182; Decided December 14, 2012). As we observed in *Herring*, supra,

> the presentation of a proper release in a form acceptable to plaintiff may
> have been a condition of defendant's performance but it was not an act

9

necessary to acceptance of plaintiff's offer to settle for the policy limits. Moreover, since the agreement to terminate the controversy already had been created, the defendant's subsequent proffer of a release form which plaintiff believed was not in compliance with the understanding of the parties would not be a rejection of the previously accepted offer.

(Citations omitted.) 213 Ga. App. at 699-700. USAA CIC's request that the Williamsons "please" sign the included release in conjunction with its statement that the $25,000 settlement check would be sent under separate cover did not impose a new condition on the settlement. Instead, it included precatory words rather than mandatory direction. *Herring*, supra. We therefore conclude that the trial court erred by denying USAA CIC's motion to enforce the settlement.

*Judgment reversed. Doyle, P. J. and Andrews, P. J., concur.*