**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 12, 2013**

# In the Court of Appeals of Georgia

A13A0787. DANIEL SHERMAN et al. v. WILLIAM ALLEN DICKEY et al.

DILLARD, Judge.

In this personal-injury action arising from a motor-vehicle accident, Daniel Sherman and Jennifer Sherman appeal the trial court's order granting summary judgment to William Allen Dickey and Melvin Dickey to enforce a settlement agreement. On appeal, the Shermans argue that the trial court erred in (1) granting summary judgment to the Dickeys when the facts show that the parties did not reach an enforceable settlement agreement and (2) awarding attorney fees pursuant to OCGA § 13-6-11. Because a binding settlement agreement was reached but the trial court was without authority to award attorney fees on summary judgment, we affirm in part and reverse in part.

The record reflects that Daniel Sherman and the Dickeys were involved in a motor-vehicle accident, which resulted in Sherman suffering serious injuries and incurring significant medical expenses. The Dickeys' vehicle was covered by an insurance policy issued by First Acceptance Insurance Company of Georgia, Inc. And on August 10, 2010, the Shermans offered to settle their claims against the Dickeys in exchange for the $25,000 policy limit covering the subject vehicle.

Specifically, the Shermans' demand requested receipt of a settlement check, a limited-liability release, and affidavits to establish the limits of the available liability-insurance coverage, all by August 20, 2010. As to the limited-liability release, the demand explained that it could not include language requiring indemnification or the release of any property-damage claims, but the demand did not include any other restrictions as to what could or could not be included in the release.

Two days after receiving the demand, the Dickeys' attorney sent correspondence to the Shermans' attorney, seeking clarification on a few points. Enclosed in this correspondence was what the Dickeys' attorney deemed a "sample" limited-liability release, to which he invited a response letting him "know if you see anything in this limited liability release which causes you concern." Thereafter, the

Dickeys ultimately obtained an extension to respond to or otherwise accept the Shermans' demand until August 25, 2010.

On August 20, 2010, the Shermans' attorney indicated that he would provide a draft of a limited-liability release, and this was sent to the Dickeys' attorney via e-mail on August 23, 2010, along with responses to the earlier-requested clarifications. That same day, the Dickeys' attorney responded through e-mail and attached "proposed revisions" to the release drafted by the Shermans'attorney, including a statutory healthcare-provider lien affidavit in the release,[1] which read as follows:

---

[1] *See* OCGA § 44-14-473 (c) (1)-(2) (providing requirements for healthcare-provider lien affidavits to validate a release of a cause of action, which affidavit must affirm "[t]hat all hospital, nursing home, physician practice, or provider of traumatic burn care medical practice bills incurred for treatment for the injuries for which a settlement is made have been fully paid; and . . . [t]he county of residence of such affiant, if a resident of this state; provided, however, that the person taking the affidavit shall not be protected thereby where the affidavit alleges the county of the affiant's residence and the lien of the claimant is at such time on file in the office of the clerk of the superior court of the county and is recorded in the name of the patient as it appears in the affidavit"); *see also* OCGA § 44-14-470 (b) (providing for hospital and other healthcare-provider liens "upon any and all causes of action accruing to the person to whom the care was furnished or to the legal representative of such person on account of injuries giving rise to the causes of action and which necessitated the hospital, nursing home, physician practice, or provider of traumatic burn care medical practice care, subject, however, to any attorney's lien"). *See generally Southern Gen. Ins. Co. v. Wellstar Health Sys., Inc.*, 315 Ga. App. 26, 29-30 (726 SE2d 488) (2012) (discussing an insurance company's obligations to satisfy healthcare-provider liens).

The Undersigned, who first being sworn, deposed and said that they have the legal capacity to give the within affidavit, that the[y] are giving the within affidavit from personal knowledge for all purposes permitted under law, hereby declare, assure, and warrant that they are residents of Henry County, Georgia. In addition, with respect to the treatment of the injuries for which this settlement is made, all hospital, nursing home, physician practice, or provider of traumatic burn care medical practice bills have been fully paid. The sworn statement in this subpart shall constitute an affidavit in compliance with O.C.G.A. § 44-14-473.[2]

The Dickeys' attorney specifically stated in his correspondence that "[i]f you do not want your client to sign a release with my proposed changes, please let me know and let's discuss." The Shermans' attorney responded that he would take a look at the revised settlement documents and "get back to" the Dickeys' attorney.

When the Dickeys did not receive a response from the Shermans' attorney by the following day, they sent a letter unconditionally accepting the demand and included a check for the $25,000 policy limit, the requested affidavits, and a limited-

---

[2] With respect to the inclusion of this section in the release, the Dickeys' attorney further explained in his correspondence that, because Daniel Sherman "had health insurance, he should be able to attest to this." And indeed, in the Shermans' response to the requested clarifications, their attorney noted that the only lien the Shermans were aware of was from a health-insurance provider.

liability release containing the language e-mailed to the Shermans' attorney the previous day. The letter stated that the enclosed release was "proposed" and again invited feedback if the Shermans disagreed with the proffered changes.

Thirty days then passed with the Dickeys hearing nothing from the Shermans. And when the Dickeys made inquiry into the status of the settlement, they learned that the Shermans were in the process of deciding whether the inclusion of the statutory-lien affidavit in the proposed release constituted a counteroffer. Thereafter, in September and November, the Dickeys' attorney again invited the Shermans to discuss or make changes to the proposed release, but instead, the Shermans returned the settlement check on November 2, 2010, along with a "rejection" of what they deemed the Dickeys' counteroffer.

The Dickeys eventually filed a complaint for breach of contract, seeking specific performance of the settlement agreement and attorney fees pursuant to OCGA § 13-6-11, and the Shermans counterclaimed with personal-injury claims. Both parties then moved for summary judgment on their respective claims. The trial court granted the Dickeys' motion for summary judgment; denied the Shermans' cross-motion; and awarded the Dickeys $6,400 in requested attorney fees pursuant

5

to OCGA § 13-6-11, finding that the Shermans' behavior "constitutes stubborn litigiousness and bad faith litigation."[3] This appeal by the Shermans follows.

1. First, the Shermans argue that the trial court erred in granting summary judgment to the Dickeys to enforce the settlement agreement, arguing that the parties failed to reach a binding agreement. We disagree.

To begin with, we note that in reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, we apply a *de novo* standard of review[4] and, thus, view the evidence in a light most favorable to the nonmoving party.[5] Moreover, well-established principles guide our inquiry into whether the parties entered into a settlement agreement.[6] Chief among

---

[3] *See* OCGA § 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.").

[4] *See, e.g.*, *Anderson v. Benton,* 295 Ga. App. 851, 852 (673 SE2d 338) (2009).

[5] *See, e.g.*, *AKA Mgmt., Inc. v. Branch Banking & Trust Co.*, 275 Ga. App. 615, 615 (621 SE2d 576) (2005).

[6] *Anderson*, 295 Ga. App. at 854 (1).

these principles is that, in order to prevent litigation, "[c]ompromises of doubtful rights are upheld by general policy . . . ."[7]

At the same time, courts are certainly limited to "those terms upon which the parties themselves have mutually agreed."[8] Indeed, apart from such mutual agreement, no enforceable contract exists between the parties.[9] And settlement agreements must meet the same requirements of formation and enforceability as other contracts.[10] Thus, an answer to an offer "will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer."[11] The offer must be accepted "unequivocally and without variance of any sort."[12] And if a purported acceptance of the plaintiff's settlement offer imposes any

---

[7] *Herring v. Dunning*, 213 Ga. App. 695, 696 (446 SE2d 199) (1994) (punctuation omitted).

[8] *Id.* at 696-97 (punctuation omitted).

[9] *Id.* at 697.

[10] *See, e.g.*, *Greenwald v. Kersh,* 275 Ga. App. 724, 725-26 (621 SE2d 465) (2005).

[11] *Anderson*, 295 Ga. App. at 855 (1) (punctuation omitted).

[12] *Id.* (punctuation omitted).

7

new conditions, it constitutes a counteroffer rather than an acceptance.[13] Nevertheless, when determining whether a purported acceptance imposes conditions rendering it a counter-offer, "our courts have drawn a distinction for 'precatory words,'"[14] which are words "whose ordinary significance imports entreaty, recommendation, or expectation rather than mandatory direction."[15] Finally, we note that the party asserting the existence of a contract has the burden of proving its existence and its terms.[16] With the foregoing principles in mind, we turn now to the Shermans' argument on appeal.

The Shermans contend that the Dickeys' insertion of statutory-lien-affidavit language into a proposed limited-liability release rendered their purported acceptance a counteroffer. But the record reflects that the Dickeys repeatedly invited changes to the proposed release and feedback regarding any concerns the Shermans might have, and we discern nothing to suggest that the Dickeys intended for the release to

---

[13] *Id.*

[14] *Turner v. Williamson*, Case. No. A12A2534, 2013 WL 764657, at *3 (Ga. App. Feb. 28, 2013).

[15] *Id.* (punctuation omitted).

[16] *See, e.g.*, *Millwood v. Art Factory, Inc.,* 306 Ga. App. 164, 166 (702 SE2d 7) (2010).

constitute a counteroffer or that the Shermans were required to sign *that particular release* to effectuate settlement.[17] And it is well settled that the mere inclusion of a release form that is unacceptable to the plaintiff "does not alter the fact that a meeting

[17] *See Hansen v. Doan*, Case. No. A12A1988, 2013 WL 1150623, at *4 (1) (Ga. App. Mar. 21, 2013) (holding that a binding contract was formed when plaintiff was invited to tailor limited-liability release to fit his needs, no suggestion was made that release constituted a counteroffer or that plaintiff was required to execute the specific release as a condition of settlement, and communications clearly contemplated that plaintiff would change portions that were unacceptable); *see also Turner*, 2013 WL 764657, at *4 (2) (holding that binding agreement was reached when communications demonstrated an unequivocal acceptance of demand terms and "contained no language conditioning acceptance upon execution of the particular release form . . . provided with" acceptance letter); *Smith v. Hall*, 311 Ga. App. 99, 102 (714 SE2d 742) (2011) (holding that "inclusion of a general release was merely a suggestion of how to terminate the lawsuit," and that acceptance was not qualified on use of the specific release and party was "willing to discuss the terms of a release"). *Compare McReynolds v. Krebs*, 290 Ga. 850, 853-54 (2) (725 SE2d 584) (2012) (holding that purported acceptance was a counteroffer when response *required* additional act of resolving all liens); *Frickey v. Jones*, 280 Ga. 573, 575-76 (630 SE2d 374) (2006) (holding that purported acceptance letter was a counteroffer when it *conditioned* settlement upon additional act of resolving medical liens that were not mentioned in offer); *Torres v. Elkin*, 317 Ga. App. 135, 142-43 (2) (730 SE2d 518) (2012) (holding that purported acceptance was a counteroffer when it *conditioned* settlement upon satisfaction of liens); *Penn v. Muktar*, 309 Ga. App. 849, 850-51 (711 SE2d 337) (2011) (holding that purported acceptance was a counteroffer when "proposed" release contained terms that directly contradicted the demand and letter *required* execution and return of the release before draft of policy limits could be removed from trust); *Anderson*, 295 Ga. App. at 855 (1) (holding that purported acceptance was a counteroffer when it was *expressly contingent* upon execution of included release that contained terms directly contradictory to demand requirements).

of the minds has occurred with regard to the terms of the settlement."[18] Furthermore, the inclusion of the statutory-lien affidavit sought only to confirm an assertion that had previously been made by the Shermans' attorney—*i.e.*, that there were no known healthcare-provider liens.[19] Accordingly, the trial court did not err in determining that a binding settlement agreement was reached and granting summary judgment to the Dickeys.

2. Next, the Shermans contend that the trial court erred in granting attorney fees pursuant to OCGA § 13-6-11. We agree.[20]

---

[18] *Hansen*, 2013 WL 11500623, at *4 (punctuation omitted); *accord Smith*, 311 Ga. App. at 102; *Moreno v. Strickland*, 255 Ga. App. 850, 853 (1) (567 SE2d 90) (2002); *Herring*, 213 Ga. App. at 699.

[19] *See Mealer v. Kennedy*, 290 Ga. App. 432, 436 (659 SE2d 809) (2008) (noting that proffer of no-lien affidavit and request that it be signed was "merely an attempt to memorialize" an understanding that no liens existed after injured party's attorney had previously stated that there were no known liens); *see also Frickey*, 280 Ga. at 576 n.2 ("We do not suggest . . . that the mere request for confirmation that no liens exist renders an acceptance a counteroffer which rejects the plaintiff's offer." (punctuation omitted)).

[20] We note that the Dickeys argue that the Shermans have waived this argument on appeal by failing to raise it below, but we do not agree. Indeed, the lack of argument below does not preclude the fact that the trial court was expressly without authority to do what it did, and it is conceivable that the Shermans would not have made such an argument until the award was made specifically *because* the trial court was without authority.

OCGA § 13-6-11 provides that

> [t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

Here, when the trial court awarded summary judgment to the Dickeys on their contention that a binding settlement agreement was reached, it also granted their request for $6,400 in requested attorney fees after finding that the Shermans' behavior "constitutes stubborn litigiousness and bad faith litigation." On appeal, the Shermans argue, *inter alia*, that the trial court's award of attorney fees was erroneous because the trial court did not have the power to make such an award at summary judgment. The Shermans are correct.

Our Supreme Court has held that attorney fees cannot be awarded by a trial court pursuant to OCGA § 13-6-11 at the summary-judgment stage of proceedings because the very language of the statute "prevents a trial court from ever determining that a claimant is entitled to attorney fees as a matter of law."[21] Indeed, it is well

---

[21] *Covington Square Assoc., LLC v. Ingles Mkts., Inc.*, 287 Ga. 445, 445 (696 SE2d 649) (2010); *accord Royal v. Blackwell*, 289 Ga. 473, 477 (2) (b) (712 SE2d 815) (2011).

established that "because both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, a trial court is not authorized to grant summary judgment in favor of a claimant therefor."[22] And although a trial court is permitted to grant such fees when it sits as a trier of fact, "it is not a trier of fact on a motion for summary judgment."[23] Accordingly, the trial court here was without authority to grant attorney fees pursuant to OCGA § 13-6-11 on summary judgment, and we reverse the trial court's grant of summary judgment to that extent.[24]

---

[22] *Covington Square Assoc.*, 287 Ga. at 446; *see also Royal*, 289 Ga. at 478 (2) (b) ("Whether a plaintiff has met any of the preconditions for an award of attorney fees and litigation expenses set forth in OCGA § 13-6-11 is solely a question for the jury. Both the liability for an amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination." (punctuation omitted)); *Tyler v. Thompson*, 308 Ga. App. 221, 222 (1) (707 SE2d 137) (2011) ("[A]warding summary judgment in favor of a claimant for expenses of litigation under OCGA § 13-6-11 is error because the issue is for the trier of fact.").

[23] *Covington Square Assoc.*, 287 Ga. at 448 (punctuation omitted); *accord Meek v. Mallory & Evans, Inc.*, 318 Ga. App. 407, 411 (5) (734 SE2d 109) (2012); *Crouch v. Bent Tree Cmty, Inc.*, 310 Ga. App. 319, 323 (6) (713 SE2d 402) (2011).

[24] *See, e.g.*, *Crouch*, 310 Ga. App. at 323 (6) (reversing trial court's grant of summary judgment awarding attorney fees and costs under OCGA § 13-6-11).

Because we agree that a binding agreement was reached but hold that the trial court lacked authority to award OCGA § 13-6-11 attorney fees at summary judgment, we affirm in part and reverse in part.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and McMillian, J., concur.*