**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 18, 2013**

# In the Court of Appeals of Georgia

A13A1541. NEWTON v. RAGLAND.

RAY, Judge.

In this personal-injury action arising from a motor-vehicle accident, Amanda Newton appeals from the trial court's order denying her motion to enforce a settlement agreement with the plaintiff, Steve Ragland, and from the judgment and award of attorneys fees entered against her after a jury trial. For the reasons explained below, we reverse the trial court's orders.

> We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the [C]ourt that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the Appellant's

case. Thus, we view the evidence in a light most favorable to the nonmoving party.

(Citation and punctuation omitted.) *Johnson v. Dekalb County*, 314 Ga. App. 790, 791 (726 SE2d 102) (2012).

The record in this case shows that on March 22, 2009, Ragland and Newton were involved in a motor vehicle accident, in which Newton ran a red light at an intersection and struck Ragland's vehicle. Ragland suffered severe injuries. At the time of the collision, Newton's vehicle was covered by two insurance policies: her automobile liability insurance, a USAA General Indemnity Company policy, and a Zurich Insurance Company policy held by the car dealership that owned the car she was driving at the time of the accident. Both policies had a per person bodily coverage limit of $25,000. Ragland also had $175,000 in underinsured/uninsured motors ("UM") coverage through the vehicles he owned.

On July 27, 2009, Ragland's attorney sent a letter to claims adjusters at Zurich and USAA. The letter, in relevant part, noted

It is my understanding that the total combined liability coverage for this accident is $50,000.00, with $25,000.00 from USAA and $25,000.00 from Zurich. On behalf of [Ragland], I have been authorized to demand these amounts in return for a limited liability release pursuant to OCGA

2

§ 33-24-41.1. . . . This demand is contingent upon two separate checks in the amount of $25,000.00 each no later than noon (eastern daylight savings time) on August 7, 2009. . . . Please be aware there is UM coverage available at least $175,000.00 and in order to obtain that, your payment as set out above is essential. Mr. Ragland will be going off short term disability on Friday, July 31, 2009 and the long term disability will not be effective until September 1, 2009. Therefore there is a gap in payments and time is of the essence. Any variation to the above terms outlined above will be considered a rejection. This offer is only being made once.

On August 6, 2009, the USAA claims adjuster sent a letter and a $25,000 check to Ragland's attorney. That letter, in relevant part, stated "[w]e've settled the . . . claim . . . . Please complete the attached release and return it. Your signature(s) must be witnessed." The claims adjuster attached a general, or full, release form instead of a limited liability release form.

Before noon on August 7, 2009, Ragland's attorney faxed a letter to the USAA claims adjuster confirming that he had received USAA's $25,000 check prior to the deadline. His letter further stated the following:

We have not had any discussions regarding the package that I received today. Unless I hear otherwise, I assume that your tender of the

3

$25,000.00 is conditioned upon Mr. Ragland signing the release and thereby agreeing to hold harmless, defend, and indemnify the insurer for all claims and for any amounts the insured is required to pay as a result of claims asserted against the insurer that are outlined in paragraph four (4) of the release, including any and all attorney fees incurred. . . .

The letter did not mention that the release provided by USAA's claims adjuster was general and not limited. The letter also did not state that Ragland would not sign the liability waiver. The record before us is silent as to whether USAA provided any response to the letter or when USAA was even aware of the letter.

On August 10, 2009, Ragland filed his complaint in this case through a different attorney. Two days later, Ragland's original attorney informed the USAA claims adjuster by letter that Ragland had terminated him as counsel, and he returned USAA's $25,000 check, which had been made jointly payable to Ragland and his law firm, and asserted an attorney's lien of $8,710.56.

Newton was served with the complaint in the instant action on August 18, 2009. On August 28, 2009, Ragland's new attorney informed the USAA claims adjuster that Ragland took the position that USAA had rejected his settlement offer by providing a general release rather than a limited liability release. Newton filed an answer and a motion to enforce the settlement agreement, which the trial court

denied. In its order, the trial court concluded that USAA "rejected [Ragland's] demand by enclosing a general release and stating that [Ragland's] signature on the general release 'must' be witnessed, rather than enclosing a limited liability release."

1. In her first enumeration of error, Newton contends that the trial court erred in denying her motion to enforce the settlement agreement because a contract to settle was formed when USAA sent the policy limits to Ragland by his offer letter's due date. We agree.

"[T]he law . . . favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (Punctuation and footnote omitted.) *Greenwald v. Kersh*, 275 Ga. App. 724, 726 (621 SE2d 465) (2005). However, a settlement agreement is subject to the same requirements of contract formation as other contracts. Id. at 725-726. Thus, when inquiring whether the parties entered into a settlement agreement, this Court is "limited to those terms upon which the parties themselves have mutually agreed." (Footnote and punctuation omitted.) *Sherman v. Dickey*, __ Ga. App. __ (1) (744 SE2d 408) (2013). If no such mutual agreement exists, then there is no enforceable contract between the parties. Id. Thus,

an answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. The offer must be accepted unequivocally and without variance of any sort. And if a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance.

Id. With these principles in mind, we now turn to Newton's argument on appeal.

Newton contends that Ragland's offer in the present case was to enter into a unilateral contract, which was formed upon USAA's performance of sending a check to Ragland's counsel within the time frame demanded. Thus, Newton argues, payment was the only action needed to accept Ragland's offer to settle and that the parties had reached a meeting of the minds sufficient to form a contract, regardless of what release USAA sent with said payment. This is especially true, Newton contends, because Ragland's offer letter did not demand or request USAA to prepare the limited liability release to be signed in exchange for payment. Ragland, on the other hand, contends that USAA's acceptance of his offer was not "unconditional and identical with the terms of the offer, [because Ragland] was left to question what release USAA would require him to sign and what rights he would give up by accepting the money." (Punctuation omitted.)

Although the general release provided by USAA included additional terms not acceptable to Ragland, "it is well settled that the mere inclusion of a release form unacceptable to the plaintiff does not alter the fact that a meeting of the minds had occurred with regard to the terms of the settlement." (Citations omitted.) *Turner v. Williamson*, 321 Ga. App. 209, 213 (2) (738 SE2d 712) (2013). Further, "[w]hen determining whether a purported acceptance imposes conditions rendering it a counter-offer, our courts have drawn a distinction for 'precatory words.'" (Citations omitted.) *Turner*, supra at 212. Precatory words are those words that indicate "entreaty, recommendation, or expectation rather than any mandatory direction." (Citation and punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994).

The present case is factually similar to *Turner v. Williamson*, supra. In *Turner*, plaintiffs' counsel sent to the insurance company an offer to settle for the policy limits in exchange for a limited liability release pursuant to OCGA § 32-24-41.1. Id. at 210-211. The insurance company accepted the offer; it sent a check for policy limits, a proposed release that added additional language beyond that included in the limited liability release statute, and a letter requesting that the injured party "please" sign the included release form in front of witnesses and return it. Id. The plaintiffs'

counsel then informed the insurance company that his clients were rejecting the "counteroffer." Id. On appeal from the trial court's denial of the insurance company's motion to enforce the settlement agreement, this Court held that because the insurance company's acceptance letter included "precatory words rather than mandatory words[,]" and "contained no language conditioning acceptance upon execution of a particular release form[,]" any variation in the terms of the liability release agreement sent by the insurance company did not impose a new condition of settlement, and that the trial court erred in denying the insurance company's motion to enforce the settlement agreement. Id. at 213-214 (2). In so holding, the *Turner* Court noted that

> the presentation of a proper release in a form acceptable to plaintiff may have been a condition of defendant's performance but it was not an act necessary to acceptance of plaintiff's offer to settle for the policy limits. Moreover, since the agreement to terminate the controversy had already been created, the defendant's subsequent proffer of a release form which plaintiff believed was not in compliance with the understanding of the parties would not be a rejection of the previously accepted offer.

(Citation omitted). Id. at 214 (2) (quoting *Herring v. Dunning*, supra at 699-700.

The terms of Ragland's offer in the present case stated that he would execute a limited liability release pursuant to OCGA § 33-24-41.1 in exchange for the policy limits by a certain deadline. USAA's tender of the policy limits by Ragland's deadline

8

constituted acceptance of the offer. The language contained in USAA's acceptance letter requesting that Ragland "please complete the attached release and return it" used precatory rather than mandatory words, and we are constrained under the precedent of *Turner* to hold that USAA's inclusion of a general liability release form rather than a limited liability release form did not impose a new condition of settlement. The fact that USAA used a mandatory directive in a later sentence in its acceptance letter, that "[y]our signature(s) must be witnessed[,]" does not change our analysis, as this directive only related to how Ragland and his counsel were to sign the release; it did not mandate that a certain release be signed. Therefore, USAA complied with the terms of Ragland's offer by submitting a $25,000 check within the offer's deadline, and the trial court erred in denying USAA's motion to enforce the settlement agreement. Compare *Frickey v. Jones*, 280 Ga. 573, 575-576 (630 SE2d 374) (2006) (purported acceptance letter was conditioned settlement upon resolution of medical liens not mentioned in offer and was determined to be a counteroffer); *Anderson v. Benton*, 295 Ga. App. 851, 855 (1) (673 SE2d 338) (2009) (purported acceptance expressly contingent upon execution of included release that did not comply with release terms specified in plaintiff's offer).

Although Ragland's counsel faxed a letter to USAA immediately after receiving USAA's settlement check and acceptance letter stating that "I assume that your tender of the $25,000.00 is conditioned upon Mr. Ragland signing the [attached] release[,]" that fax was sent *after* USAA had accepted Ragland's settlement offer by tendering a check for the policy limits within the deadline and after a binding contract had been formed. See *Herring*, supra ("An offer may be accepted . . . by either a promise to do a thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act") (citation and punctuation omitted).

Based upon the above, we therefore conclude that the trial court erred by denying USAA's motion to enforce the settlement agreement.

2. USAA contends that the trial court erred in finding that Ragland was entitled to attorney fees and expenses of litigation under OCGA § 9-11-68. Because of our holding in Division 1, we agree and reverse the award of attorney fees and expenses of litigation awarded to Ragland.

*Judgment reversed. Barnes, P. J., and Miller, J., concur.*