**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 22, 2022**

# In the Court of Appeals of Georgia

A22A0322. PROGRESSIVE MOUNTAIN INSURANCE
COMPANY v. BUTLER.

Pɪɴsoɴ, Judge.

Ernest Butler was injured in a car accident and hired counsel to assist with his personal-injury claim. His counsel negotiated a settlement with the driver's insurer and sent a letter documenting Butler's acceptance of the insurer's offer. Days later, Butler fired his counsel, and he later hired another attorney, who tried to negotiate for a higher settlement amount. The insurer filed suit and moved to enforce the settlement agreement, which Butler claimed had been entered into without his consent. The trial court denied the motion, concluding that the parties had not formed an enforceable settlement agreement.

We reverse. Everyone agrees that the insurer offered to settle for a specific dollar amount, and counsel's letter unequivocally accepted that offer without imposing any additional conditions. That is enough to form an enforceable settlement agreement here, and because the insurer was not made aware of any restrictions on the authority of Butler's counsel, her assent bound Butler. If Butler did not authorize the settlement, his recourse is against the attorney.

## Background

The following facts are undisputed. In March 2019, Butler was injured when his vehicle was side-swiped by a tractor-trailer. The tractor-trailer driver, Julio Maden, was employed by a commercial motor carrier, Carrier Compliance Service, which was insured by Progressive. Butler retained counsel, who began negotiating with Progressive to settle the case.

On January 22, 2020, Butler's counsel, Sarah Jett, emailed a Progressive representative. The email stated: "Attached is the hold harmless letter. Please send the check and settlement documents to: [Jett's law firm's name and address]." Attached to the email was a letter stating:

> Please allow this letter to confirm that Ernest Butler accepts Progressive
> Mountain Insurance Company's offer of $17,500.00 as full and final

2

settlement of the above-referenced claim. This settlement is for the bodily injury claim ONLY. Please make the check payable to Ernest Butler and The Law Offices of Gary Martin Hays & Associates, P.C. Further our firm agrees to address any statutorily valid liens filed prior to the distribution of the settlement funds.

The letter again asked Progressive to forward the check and settlement documents to Jett at the firm's address.

Eight days later, Jett sent a letter to Progressive stating that her firm no longer represented Butler and giving notice of an attorneys' lien her firm was placing on any future settlement or verdict in the case. About a month after that, Butler's new counsel sent Progressive a letter offering to settle the case for $350,000. Counsel representing Carrier and Maden responded with a letter noting that Butler had already agreed to settle the case for $17,500 and requesting instructions for submitting payment and settlement documents.

Butler did not respond, and two months later, Progressive sued Butler, seeking a declaratory judgment stating that the parties had reached a binding settlement agreement. Butler answered, denying that he had ever accepted a settlement offer and asserting that Jett had engaged in settlement negotiations without his consent. Progressive then moved to enforce the settlement agreement.

3

After a hearing, the trial court entered an order denying the motion to enforce. The court found that Jett's January 22, 2020 letter "did not include any specific terms" and was not "made available to" Butler. The court also found that Jett "never received a formal offer, in writing, from [Progressive]"; that neither Butler nor Jett ever "signed any release of liability agreement or other settlement documents"; and that Progressive "never agreed to the terms" in Jett's letter or remitted any payment to Butler. Based on these findings, the court concluded that the letter was not an enforceable settlement agreement.

Progressive appealed.[1]

Discussion

---

[1] The trial court's order was a final appealable judgment under OCGA § 5-6-34 (a) (1) because it resolved the sole issue in the case. See *Tyrones v. Tyrones*, 300 Ga. 367, 369 n.2 (792 SE2d 398) (2016) (noting that an order is considered a final judgment within the meaning of OCGA § 5-6-34 (a) (1) "where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court" (citation and punctuation omitted)). Cf. *Underwood v. Underwood*, 282 Ga. 643, 644 (1) (651 SE2d 736) (2007) (holding that an order granting a motion to enforce a settlement agreement is not a final judgment "until such time as the agreement 'has been made the judgment of the court, thereby terminating the litigation'"); *Claxton v. Adams*, 357 Ga. App. 762, 764 (1) (849 SE2d 494) (2020) (holding that trial court's order granting motion to enforce settlement agreement was not a final judgment for appeal purposes).

4

The trial court decided this case on motion rather than by a bench trial, so "the issues raised in this appeal are analogous to those in a motion for summary judgment[,] [and] [o]ur review is de novo." *Jones v. Frickey*, 274 Ga. App. 398, 400 (618 SE2d 29) (2005) (citation and punctuation omitted). Accord *Cumberland Contractors, Inc. v. State Bank and Trust Co.*, 327 Ga. App. 121, 127 (3) (755 SE2d 511) (2014). Summary judgment is proper if the pleadings and evidence of record show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c).

1. We start by discarding a potential threshold basis for rejecting the settlement agreement: Jett's authority to settle Butler's claims. Although Butler has maintained that he did not authorize Jett to agree to Progressive's offer, he acknowledges that he cannot rely on that basis to avoid the agreement, because Jett had apparent authority to enter into a settlement agreement. See *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 674-75 (2) (308 SE2d 544) (1983).

We agree. Under Georgia law, attorneys have the apparent authority to enter into agreements on behalf of their clients, and those agreements are enforceable against the clients by other settling parties. *Brumbelow*, 251 Ga. at 674; see OCGA § 15-19-5. Put another way, unless an opposing party has been made aware of express

5

restrictions on the attorney's authority to settle, that authority "may be considered plenary by the court and opposing parties," and the attorney's assent to an agreement will bind the client. Id. at 675. If an attorney "overstep[s] the bounds of his agency" in negotiating on the client's behalf and reaches an agreement he did not authorize, the client's remedy for that problem is to seek redress against the attorney. *Brumbelow*, 251 Ga. at 675. Accord *Blanton v. Crump Heating & Air, LLC*, 345 Ga. App. 488, 491 (811 SE2d 125) (2018) (physical precedent only). Just so here.

2. Because Jett had apparent authority to settle his claims, Butler does not rely on her purported lack of actual authority to attack the settlement agreement. Instead, he contends that Jett's letter did not create a binding settlement agreement at all.

Settlement agreements are subject to "the same requirements of formation and enforceability as other contracts." *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (A) (797 SE2d 814) (2017) (citation and punctuation omitted). Accord *Jones*, 274 Ga. App. at 401. This means that an agreement to settle a pending dispute is formed only "when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." Id. (citation omitted). When an offer to settle has been extended, an answer to the offer will amount to an acceptance only if it is "unconditional and identical with the terms of the offer." Id. (citation and punctuation

6

omitted). All of that said, "[t]he law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." *Cumberland Contractors*, 327 Ga. App. at 127 (3) (citation and punctuation omitted).

The required offer and unconditional acceptance are present here. Butler admits that Progressive offered to settle Butler's claims for $17,500, and Jett's letter unconditionally accepted Progressive's offer to settle those claims for that same amount. This is enough to create a binding settlement agreement. See, e.g., *Vildibill*, 244 Ga. App. at 749 (1) (letter accepting offer to settle for specific dollar amount in return for "'any release you deem appropriate'" created a binding settlement agreement); *Herring v. Dunning*, 213 Ga. App. 695, 698-99 (446 SE2d 199) (1994) (attorney's letter written to accept plaintiff's offer to settle claims for $15,000 in exchange for full and final release created binding settlement agreement). See also *Turner v. Williamson*, 321 Ga. App. 209, 213 (2) (738 SE2d 712) (2013) (binding settlement agreement formed where insurance-claims handler's written and oral communications showed unequivocal acceptance of an offer to settle for insurance policy limits in exchange for execution of statutory release form). Jett's letter also

includes information about the logistics of payment and the handling of liens by Jett's firm, but this language was purely informational and did not impose any additional conditions that would have created a counteroffer rather than an acceptance. See *McReynolds v. Krebs*, 290 Ga. 850, 853 (2) (725 SE2d 584) (2012) ("A purported acceptance of a plaintiff's settlement offer which imposes conditions . . . will be construed as a counter-offer." (citation and punctuation omitted)); *Herring*, 213 Ga. App. at 698-99 (language asking about the existence of liens did not create a counteroffer because it merely sought confirmation of counsel's belief about the absence of liens rather than impose a new condition).[2] Finally, Jett's letter satisfies the writing requirement for settlement agreements whose existence or terms are in dispute. See *Brumbelow*, 251 Ga. at 676 (citing OCGA § 15-19-5) (explaining that "[o]rdinarily, for an attorney to bind his client to a settlement agreement where there is a dispute as to terms, the agreement must be in writing," and "letters or documents prepared by attorneys which memorialize the terms of the agreement" satisfy that

---

[2] Cf. *Turner*, 321 Ga. App. at 213 (1) (attorney's letter proposing use of a different release form was a counteroffer rather than an acceptance where offer was conditioned on execution of particular release); *Torres v. Elkin*, 317 Ga. App. 135, 142-43 (2) (730 SE2d 518) (2012) (purported acceptance letter expressing the assumption that the offeror would be satisfying all liens was a counteroffer rather than an acceptance where offer was silent about liens).

requirement); see, e.g., *Vildibill v. Palmer Johnson of Savannah, Inc.*, 244 Ga. App. 747, 749 (1) (536 Ga. App. 779) (2000) (attorney's letter accepting settlement offer established an enforceable agreement); *Ballard v. Williams*, 223 Ga. App. 1, 2 (476 SE2d 783) (1996) (attorney's letter referring to an oral settlement reached months earlier "was enough to satisfy the writing requirement").

In concluding that the agreement was not enforceable, the trial court cited the absence of a written offer, the absence of a signed release, and the fact that Progressive never formally "agreed to" the terms in Jett's letter or paid the settlement amount. None of these points call the agreement's enforceability into question. Georgia law does not require that a settlement offer be made in writing. See, e.g., *Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 883 (616 SE2d 108) (2005) (settlement agreement was enforceable where offer was extended orally); *Ballard*, 223 Ga. App. at 2 (settlement agreement was enforceable without regard to whether offer was oral or written). Nor was execution of a release required to create a binding settlement agreement: the parties here clearly contemplated signing documents to carry out the settlement's terms, but that was not necessary to create a binding agreement in the first place. See *Pourreza*, 273 Ga. App. at 883 (the fact that settlement agreement was not signed at the time the parties agreed to settle did not

9

invalidate acceptance of the offer); *Herring*, 213 Ga. App. at 699 (presentation of an acceptable release "may have been a condition of defendant's performance but it was not an act necessary to acceptance of plaintiff's offer to settle"). Similarly, Progressive's failure to tender payment of the settlement amount bears on Progressive's performance of the settlement agreement, not its existence or validity. See *Pourreza*, 273 Ga. App. at 883; *Herring*, 213 Ga. App. at 699. And Progressive was not required to "agree to" the terms in Jett's letter; the agreement was formed once Progressive's offer was accepted, without the need for any further action by Progressive. See *Newton v. Ragland*, 325 Ga. App. 371, 374 (1) (750 SE2d 768) (2013) (once offer was accepted, binding contract was formed, without regard to further communications between the parties).

For these reasons, we conclude that the parties entered into an enforceable settlement agreement, so the trial court therefore erred by denying Progressive's motion to enforce the agreement.

*Judgment reversed. McFadden, P. J., and Gobeil, J., concur*.

10