**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 16, 2024**

# In the Court of Appeals of Georgia

A24A1062. DIAZ v. THWEATT et al.

MARKLE, Judge.

Following a car accident, Daria and Delhi Thweatt (collectively "the Thweatts") sued Alexander Diaz for negligence and damages. In this interlocutory appeal, Diaz appeals from the trial court's order denying his motion to enforce the settlement agreement, arguing that, pursuant to O.C.G.A. § 9-11-67.1 (2021), the parties had resolved the matter. Because we conclude that the parties formed a binding contract, we reverse the trial court's judgment.

We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other

evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *Wright v. Nelson*, 358 Ga. App. 871, 871-872 (856 SE2d 421) (2021).

The relevant facts are not in dispute. In May 2022, the Thweatts were injured when their automobile was rear-ended by a vehicle driven by Diaz, causing their car to leave the roadway, roll over, and land on its roof. At the time of the accident, Diaz was insured under a policy with Allstate Property and Casualty Insurance Company ("Allstate").

In November of that year, Allstate, on behalf of Diaz, offered to settle the Thweatts' bodily injury claims by tendering settlement checks for the $30,000 policy limits made payable to each plaintiff in exchange for their limited liability releases, pursuant to OCGA § 33-24-41.1. Allstate also included Diaz's affidavit, as well as an affidavit from Allstate's claims representative, indicating Diaz had no additional insurance coverage.

In response, by letter dated December 12, 2022, the Thweatts' rejected Allstate's offer, returned the settlement checks, and extended their own offer of settlement pursuant to OCGA § 9-11-67.1. (2021). As is relevant to this appeal, the Thweatts' offer provided that if Allstate required the Thweatts to sign a release, they would only release their bodily and personal injury claims against Diaz. The Thweatts further indicated that they would consider it a rejection of their offer if the settlement payment or any other documents Allstate submitted included any additional terms or conditions not expressly referenced in the Thweatts' offer, or that conflicted with the terms and conditions stipulated by the Thweatts.

On January 9, 2023, Allstate, through counsel, sent a letter to the Thweatts' attorney accepting the Thweatt's offer. The letter indicated that the settlement checks would be issued once their counsel advised how they should be made out. The letter also indicated that Allstate had drafted two limited liability releases for the Thweatts to sign, although they were not enclosed. The letter expressly indicated that it was not a counteroffer, but an acceptance. On January 11, 2023, the Thweatts' counsel sent instructions on how to make out the checks. The next day, Allstate's counsel mailed the settlement checks and the limited liability releases, asking that the Thweatts

review, sign, notarize, and return them, and "to call with any questions or concerns." The releases included language discharging Diaz, Allstate, and Mariana Vazquez (the policy holder) from the Thweatts' bodily and personal injury claims; acknowledging that the policy limit was sufficient compensation; and stating the defendants denied all liability for the accident.

Instead, in March 2023, the Thweatts filed suit against Diaz. When Allstate's attorney inquired about the reason for the suit, the Thweatts' attorney responded that they viewed the releases as a counteroffer, without specifying the nonconforming terms, but stating generally that the releases contained additional terms and conditions that were not part of the Thweatts' offer. In subsequent communications, Allstate reiterated its intent to accept the Thweatts' offer and even included proposed releases in digital format for the Thweatts to edit and revise as appropriate. The Thweatts again responded, insisting that Allstate had made a counteroffer.

Thereafter, Diaz moved to enforce the settlement, arguing that Allstate, on his behalf, had timely accepted and met the material terms of the Thweatts' offer, and that the provision of any nonconforming proposed releases did not constitute a counteroffer. The Thweatts responded, contending there was no meeting of the minds

because their counteroffer to Allstate's initial offer to settle required Allstate to perform certain acts to accept it, and because Allstate had not performed those acts, it had made a counteroffer to which the Thweatts had not agreed. Specifically, the Thweatts asserted they had not agreed to release anyone other than Diaz; they had not acknowledged that the settlement would fully compensate them; and they did not agree the defendants could deny all liability for the accident. Following oral argument, the trial court denied Diaz's motion, finding that there was no enforceable agreement because Allstate had failed to conform its acceptance to the exact terms of the Thweatts' offer. The trial court specifically found that, although Allstate's releases did not amount to counteroffers under OCGA § 9-11-67.1, neither were they acceptances because they contradicted the terms of the Thweatts' offer. The trial court certified its order for immediate review, and this interlocutory appeal followed.

In his sole enumeration of error, Diaz argues the trial court erred by denying his motion to enforce the settlement because Allstate accepted the Thweatts' counteroffer pursuant to OCGA § 9-11-67.1, and the proposed releases did not constitute counteroffers. We agree.

Before reaching the merits of Diaz's argument, we must first set forth the relevant law. OCGA § 9-11-67.1, as amended in 2021,[1] includes the following pertinent language:

(a) Prior to the filing of an answer, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and: (1) Shall contain the following material terms: (A) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer; (B) Amount of monetary payment; (C) The party or parties the claimant or claimants will release if such offer is accepted; (D) For any type of release, whether the release is full or limited and an itemization of what the claimant or claimants will provide to each releasee; and (E) The claims to be released[.]

OCGA § 9-11-67.1 (a) (1).

The statute further provides that:

(b) (1) Unless otherwise agreed by both the offeror and the recipients in writing, *the terms outlined in subsection (a) of this Code section shall be the only terms which can be included in an offer to settle made under this Code*

---

[1] Because the accident at issue here occurred in 2022, we consider the version of OCGA § 9-11-67.1 in effect at that time. OCGA § 9-11-67.1 has since been amended, effective April 22, 2024.

*section.* (2) The recipients of an offer to settle made under this Code section *may accept the same by providing written acceptance of the material terms outlined in subsection (a)* of this Code section in their entirety. (c) Nothing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to both the offeror and recipient of the offer. (d) Upon receipt of an offer to settle set forth in subsection (a) of this Code section, . . . *if a release is not provided with an offer to settle, a recipient's providing of a proposed release shall not be deemed a counteroffer.*

(Emphasis supplied). OCGA § 9-11-67.1 (b)-(d).

"Whether a settlement is an enforceable agreement is a question of law for the trial court to decide." *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 749 (1) (525 SE2d 118) (1999). "The law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (Citation and punctuation omitted.) *Newton v. Ragland*, 325 Ga. App. 371, 373 (1) (750 SE2d 768) (2013); see also *Greenwald v. Kersh*, 275 Ga. App. 724, 726 (621 SE2d 465) (2005). Moreover, "the party asserting the existence of a contract has the burden of proving its existence and its terms." (Citation and punctuation omitted.) *Barnes v. Martin-Price*, 353 Ga. App. 621, 624 (1) (838 SE2d 916) (2020). Finally,

[w]hen we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). With these principles in mind, we examine Diaz's argument.

In the instant case, by letter dated December 12, 2022, the Thweatts offered to compromise their claims for the $30,000 policy limits, and they indicated that if Allstate required them to sign a release, they would only release their bodily and personal injury claims against Diaz. Their offer was made pursuant to OCGA § 9-11-67.1 and included the material terms set forth in the statute. OCGA § 9-11-67.1 (a). In subsequent letters, Allstate explicitly accepted the Thweatts' offer to settle for the policy limits, and delivered the settlement checks made payable as directed by the Thweatts. See OCGA § 9-11-67.1 (a) (1). Although the limited liability releases

8

included parties other than Diaz, Allstate did not object to any of the terms stipulated by the Thweatts or impose any additional requirements upon them.

Importantly, the language of the releases did not constitute a counteroffer. See OCGA § 9-11-67.1 (d) ("if a release is not provided with an offer to settle, a recipient's providing of a proposed release shall not be deemed a counteroffer."). Thus, once Allstate sent its letter accepting the Thweatts' offer, a settlement had been reached as to all material terms under the statute. OCGA § 9-11-67.1.

> From that moment on, the presentation of a proper release in a form acceptable to [the Thweatts] may have been a condition of Allstate's performance but [it] was not an act necessary to acceptance of [the Thweatts'] offer to settle for the policy limits. Moreover, since the agreement to terminate the controversy already had been created, Allstate's subsequent proffer of release form which [the Thweatts] believed was not in compliance with the understanding of the parties was not a rejection of the previously accepted offer.

(Citation and punctuation omitted.) *Wright*, 358 Ga. App. at 875; see also *Herring v. Dunning*, 213 Ga. App. 695, 699-700 (446 SE2d 199) (1994).

Notably, in their offer of settlement, the Thweatts did not *require* Allstate to submit a release. Rather, Allstate drafted proposed limited liability releases as the

Thweatts did not prepare their own, and it did not condition its acceptance of the Thweatts' offer upon the execution of those releases.[2] In fact, in its initial letter, Allstate stated that it had drafted two limited liability releases but that it was "in no way an attempt to make a counteroffer[,]" and that counsel should "call or email . . . with any questions or concerns." This language evinces Allstate's intent to accept the offer and that the prepared releases were merely proposed. Additionally, its subsequent communications invited the Thweatts to edit and revise the proposed releases as appropriate. "An objectively reasonable person would understand by this precatory language that Allstate was seeking [the Thweatt's] approval, not objecting to the terms of the offered release agreement." *Wright*, 358 Ga. App. at 875-876; see also *Herring*, 213 Ga. App. at 699 ("Precatory words are words 'whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction.'") (citation omitted). Given Allstate's clear intent to accept the

---

[2] We note that, although not labeled as such, Allstate refers to the releases as proposals in the subsequent communication.

offer, we cannot say the releases were a rejection of the material terms of the Thweatts' offer, and this conclusion is consistent with OCGA § 9-11-67.1 (d).[3]

Accordingly, we conclude that a binding contract was formed between the parties to accept the Thweatts' offer, and thus we reverse the trial court's judgment.

*Judgment reversed. Miller, P. J., and Land, J., concur.*

---

[3] To the extent the Thweatts argue that OCGA § 9-11-67.1 unconstitutionally infringes upon their right to insist upon contract terms of their choosing, as they did in the trial court, the trial court made no specific ruling on this issue, and therefore we do not reach it. *Perry v. Jenkins*, 361 Ga. App. 70, 76 (3) (862 SE2d 734) (2021) ("appellate courts will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point[.]") (citation omitted).