**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 13, 2025**

# In the Court of Appeals of Georgia

A25A0729. SQUARE v. WOODS.

PADGETT, Judge.

In this action, Quintin Square sued Doris Woods, Pro Cutters Lawnscapes, Inc., the Georgia Department of Transportation, and Salem Lawn Care, LLC, seeking damages arising from a motor vehicle collision that resulted in injuries to Square. Subsequently, Woods filed a motion to enforce a settlement agreement, which the trial court granted after a hearing, dismissing the claims against Woods with prejudice.[1] On appeal, Square contends the trial court erred in granting the motion because Woods's insurer did not unequivocally and identically accept his offer of compromise. For the following reasons, we affirm the judgment of the trial court.

---

[1] The court determined there was no reason to delay final judgment as to Woods and entered judgment in her favor pursuant to OCGA § 9-11-54 (b).

In reviewing the trial court's order on a motion to enforce a settlement agreement, we apply a de novo standard of review and view the evidence in a light most favorable to the non-moving party. *Torres v. Elkin*, 317 Ga. App. 135, 140 (2) (730 SE2d 518) (2012). So viewed, the record shows that on April 23, 2022, Square was injured when the motorcycle he was riding collided with the car Woods was driving as Woods attempted to make a left turn from Cobb Parkway onto another street.

Woods had liability insurance coverage through Liberty Mutual Personal Insurance Company ("Liberty Mutual"). In a letter dated December 18, 2023, Square's attorney sent an offer of compromise (the "Offer") to Liberty Mutual pursuant to OCGA § 9-11-67.1, which governs offers to settle tort claims for personal injury, bodily injury, or death arising from a motor vehicle collision.[2] The Offer—which was conditioned on being accepted "unequivocally and without variance of any sort"— provided, in part, as follows:

> Though written acceptance is necessary to form a binding settlement contract, it is not sufficient to form a binding settlement contract.

---

[2] Because the collision occurred in 2022, this opinion refers to the 2021 version of OCGA § 9-11-67.1 in effect at that time, unless otherwise noted. The statute has since been amended, effective April 22, 2024.

Rather, . . . these ACTS must be performed in addition to written acceptance:

1. Under OCGA § 9-11-67.1 (g), payment for your entire insured's individual bodily injury policy limits of $25,000 must be received by this firm no later than 40 days after receipt of this written offer. If Liberty Mutual does not perform the act of delivering a payment that complies with each and every condition of this offer, the offer has not been accepted, and there is no agreement. (Footnotes omitted).

The Offer also included a footnote that stated:

Pursuant to OCGA § 9-11-67.1 (f), Liberty Mutual may pay by: (1) cash; (2) money order; (3) wire transfer; (4) a cashier's check issued by a bank or other financial institution; (5) a draft or bank check issued by an insurance company; or (6) electronic funds transfer or other method of electronic payment. All cash payments may be sent directly to Fellows LaBriola, LLP, 223 Peachtree Street Northeast, Suite 2400, Harris Tower, Atlanta, Georgia 30303. All checks should be made out to Fellows LaBriola LLP IOLTA Trust Account with Truist Bank. Should you choose to wire payment, please contact us, and we will provide wiring instructions. Regardless of payment method chosen, the funds must be immediately available for Mr. Square. For example, if Liberty Mutual sends any type of check listed above, that check must have the ability to be immediately cashed for the benefit of Mr. Square. This is a material term of this offer due to Mr. Square's need to immediately access these funds.

Liberty Mutual sent a response letter dated January 12, 2024, stating that it was "accept[ing] [the] demand unequivocally and without variance of any sort." Liberty Mutual also sent Square's counsel a check dated January 16, 2024, from Citibank, N.A. In a January 29, 2024 letter to Liberty Mutual, Square's counsel asserted the purported acceptance failed to comply with the terms of Square's demand because Liberty Mutual sent a check drawn from Citibank, N.A., an out-of-state bank, and the funds were not immediately available to Square, so there was no acceptance under Georgia law. Square then filed the underlying action that led to this appeal.

Square contends the trial court erred by granting Woods's motion to enforce the settlement agreement because Liberty Mutual never accepted the Offer. Specifically, Liberty Mutual failed to perform one of the acts Square argues was necessary for acceptance, paying with funds that were "immediately available." Square contended the funds were not "immediately available" because the check was drawn on an out-of-state bank that had no branches in Georgia and required a hold at Truist Bank.

The applicable version of OCGA § 9-11-67.1 includes the following pertinent language:

(a) Prior to the filing of an answer, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and: (1) Shall contain the following material terms: (A) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer; (B) Amount of monetary payment; (C) The party or parties the claimant or claimants will release if such offer is accepted; (D) For any type of release, whether the release is full or limited and an itemization of what the claimant or claimants will provide to each releasee; and (E) The claims to be released[.]

OCGA § 9-11-67.1 (a).

The statute further provides that:

(b) (1) Unless otherwise agreed by both the offeror and the recipients in writing, the terms outlined in subsection (a) of this Code section shall be the only terms which can be included in an offer to settle made under this Code section. (2) The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety.

OCGA § 9-11-67.1 (b).

5

"Whether a settlement is an enforceable agreement is a question of law for the trial court to decide." *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 749 (1) (525 SE2d 118) (1999). "The law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (Citation and punctuation omitted.) *Newton v. Ragland*, 325 Ga. App. 371, 373 (1) (750 SE2d 768) (2013). "[T]he party asserting the existence of a contract has the burden of proving its existence and its terms." (Citation and punctuation omitted.) *Barnes v. Martin-Price*, 353 Ga. App. 621, 624 (1) (838 SE2d 916) (2020). Finally,

> [w]hen we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). With these principles in mind, we examine Square's arguments.

6

Square argues that Liberty Mutual, by not providing payment that was "immediately available" to Square, failed to accept the Offer. We disagree and conclude that Liberty Mutual did accept the Offer.

Square expressly made this Offer "pursuant to" the 2021 version of OCGA § 9-11-67.1. Consistent with the statute, he gave Liberty Mutual 30 days to accept the offer in writing, and 40 days to pay the policy limits. Also consistent with the statute, he said Liberty Mutual could elect any of the six means of payment expressly authorized by the statute. Liberty Mutual delivered a timely, written acceptance of the offer, and it elected to pay with a check drawn on Citibank—a means expressly authorized by the statute and which was among the payment options listed in the settlement offer—which Liberty Mutual delivered to Square's counsel ten days before the deadline set in Square's settlement offer.

When Square's counsel received the settlement check ten days prior to the deadline set by the offer, no attempt was made to present it for payment at Truist Bank, where counsel maintained his trust account. Instead, counsel waited eleven days and then informed Liberty Mutual that it had failed to accept the offer because Truist would not make funds "immediately available" on a Citibank check. Counsel pointed,

however, to a Truist policy that shows Truist would not make funds "immediately available" for any check drawn on any bank, even one drawn on Truist itself. If Square had presented the check promptly upon its delivery to his counsel, Truist would have made the funds available in the ordinary course of banking well before the deadline for Liberty Mutual to make the settlement payment. Under these circumstances, we conclude that a settlement agreement was reached and that Liberty Mutual's performance met the terms addressed within the settlement agreement.

Square also argues OCGA § 9-11-67.1 does not apply to pre-suit offers and cannot be used to create a contract here. Square contends that since OCGA § 9-11-67.1 is included in the Civil Practice Act, its application is limited to the time after a complaint is filed. We disagree.

Square's Offer explicitly stated that it was made pursuant to OCGA § 9-11-67.1. Further, this Court has applied the 2021 version of OCGA § 9-11-67.1 to pre-suit offers. See *Diaz v. Thweatt*, 373 Ga. App. 586 (908 SE2d 22) (2024) (Plaintiff extended a settlement offer pursuant to OCGA § 9-11-67.1 prior to filing suit against defendants, and this Court reversed the trial court and found that there was a binding

8

contract between the parties.) Therefore, we affirm the trial court's order granting Woods's motion to enforce the settlement.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*