**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 22, 2026**

# In the Court of Appeals of Georgia

A25A1635. BONILLA v. VENTURA et al.

HODGES, Judge.

In this action, counsel for Fredy Ventura and Alicia Cortez Franco (Plaintiffs) made a pre-suit offer to Liberty Mutual to settle their claims following a motor vehicle collision involving its insured, John Bonilla. Liberty Mutual accepted the settlement offer in writing and issued a check for the settlement amount. Contending that Liberty Mutual's acceptance did not match their demand, Plaintiffs refused the payment. The trial court found that Liberty Mutual did not comply with the offer's terms, and denied Bonilla's motion to enforce the settlement agreement. Bonilla appeals. Because we conclude that Liberty Mutual, on behalf of Bonilla, complied with the precise acceptance terms of the settlement offer, we reverse.

"In reviewing the trial court's order on a motion to enforce a settlement agreement, we apply a de novo standard of review and view the evidence in a light most favorable to the non-moving party." *Redfearn v. Moore*, 371 Ga. App. 655 (902 SE2d 233) (2024). The facts relevant to this appeal are undisputed.

Plaintiffs were the parents of Nuvia Joana Ventura Cortez. In August 2023, Cortez was riding as a passenger in a vehicle driven by Bonilla when the vehicle crashed. Cortez died at the scene from her injuries. In January 2024, Plaintiffs, through counsel, sent a demand letter to Bonilla's insurance company, Liberty Mutual, offering to settle their claims against Bonilla in exchange for its payment of the $25,000 policy limits. In their demand letter, Plaintiffs referenced OCGA § 9-11-67.1 and stated, "[t]o accept this offer, Liberty Mutual must accept it in writing within thirty days of the date that this offer is received by [it], and payment must be received by our firm forty-five days after the date that this offer is received by [it]." The demand letter contained a footnote which stated "[t]imely payment is a condition of acceptance." Liberty Mutual received the settlement offer on January 10, 2024. Forty-five days from January 10, 2024 was February 24, 2024 (a Saturday).

On January 16, 2024, well-within the 30-day acceptance period, Liberty Mutual mailed an acceptance letter to Plaintiffs' counsel. In its letter, Liberty Mutual stated, "[y]our demand has been accepted as presented." Liberty Mutual also sent a check for $25,000 dated January 18, 2024. Plaintiffs received the letter and the check on January 19, 2024 (nine days after Liberty Mutual received the offer). Plaintiffs, however, never presented the check for payment and sent a letter to Liberty Mutual on February 27, 2024 contending that Liberty Mutual's letter was a counter-offer which Plaintiffs rejected.

On February 28, 2024, Plaintiffs filed their wrongful death complaint against Bonilla. After filing an answer, Bonilla filed a motion to enforce the settlement agreement. Following a hearing, the trial court denied his motion, concluding that he "did not comply with the precise acceptance terms" by paying on the ninth day rather than the forty-fifth day. This Court granted Bonilla's application for interlocutory review to challenge the trial court's order.

In his sole enumeration of error, Bonilla contends that his insurance carrier complied with the terms of accepting Plaintiffs' offer and the early payment did not

constitute a counteroffer or other rejection of the demand under OCGA § 9-11-67.1. Specifically, Bonilla asks this Court to conclude that the trial court erred in denying his motion to enforce the settlement agreement because (i) there was no written agreement for his insurer to pay the demand on the exact date of Saturday, February 24, 2024; and (ii) even if there was such an agreement, it was satisfied by the early payment. For the following reasons, we conclude that Liberty Mutual complied with the precise acceptance terms of the offer.

Pre-suit offers to settle tort claims for personal injury, bodily injury or death arising from the use of a motor vehicle are controlled by OCGA § 9-11-67.1. Originally enacted in 2013, this Code section was amended in 2021 to require such offers to settle to include certain material terms. See Ga. L. 2021, p. 431, §§ 1 and 4. The parties do not dispute that the 2021 version applies to the facts of this case.[1] The 2021 version of the law includes the following pertinent language:

> (a) Prior to the filing of an answer, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor

---

[1] OCGA § 9-11-67.1 was substantially revised in 2024 to clarify the nature of offers to settle such cases and which terms are material. See Ga. L. 2024, p. 178, § 1. This version, however, is not applicable to the facts of this case.

vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and:

(1) Shall contain the following material terms:

(A) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer;

(B) Amount of monetary payment;

(C) The party or parties the claimant or claimants will

release if such offer is accepted;

(D) For any type of release, whether the release is full or limited and an itemization of what the claimant or claimants will provide to each releasee; and

(E) The claims to be released[.]

OCGA § 9-11-67.1(a) (2021). The statute further provides:

(b)(1) Unless otherwise agreed by both the offeror and the recipients in writing, the terms outlined in subsection (a) of this Code section shall be the only terms which can be included in an offer to settle made under this

Code section.

(2) The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety.

OCGA § 9-11-67.1(b) (2021). Specifically, the statute notes that nothing in OCGA § 9-11-67.1 "is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to both the offeror and recipient of the offer." OCGA § 9-11-67.1(c) (2021).

"Whether a settlement is an enforceable agreement is a question of law for the trial court to decide." *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 749(1) (525 SE2d 118) (1999). "The law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." *Newton v. Ragland*, 325 Ga. App. 371, 373(1) (750 SE2d 768) (2013) (citation and punctuation omitted). The party asserting the existence of a settlement agreement has the burden of proving that an agreement was formed. *de Paz v. de Pineda*, 361 Ga. App. 293(1) (864 SE2d 134) (2021).

1. Bonilla first argues that there was no written agreement for Liberty Mutual to receive payment Saturday, February 24, 2024, rather than prior to that date, as a

condition of acceptance. Under the 2021 version of OCGA § 9-11-67.1, the five statutory terms for acceptance, which do not include a deadline for payment, "[were] the only terms which [could] be included in an offer to settle[.]"[2] OCGA § 9-11-67.1(b)(1) (2021). The Code section, however, also provided that parties could agree in writing to other terms. OCGA § 9-11-67.1(b)(1), (c) (2021). To the extent Bonilla argues that under the 2021 version of the statute, a written agreement to non-statutory terms was an agreement to a term of performance rather than of acceptance, this Court has squarely rejected this contention. *Redfearn*, 371 Ga. App. at 657(1) (concluding that the 2021 amendment to OCGA § 9-11-67.1 "does not change the general law regarding contract formation and settlement formation specifically").

> The general law provides that settlement agreements must meet the same requirements of formation and enforceability as other contracts. Importantly, there is no enforceable settlement between the parties absent mutual agreement between them. That existing law includes the fundamental principle of contract law that an offeror is the master of his or her offer, and free to set the terms thereof. And along those lines, an offeror may include terms of acceptance establishing a unilateral

---

[2] OCGA § 9-11-67.1 now provides that offers to settle under the Code section are offers to enter into a bilateral contract and if the offer contains "any term outside of the material terms provided . . . [by the] Code section, such term shall be construed as an immaterial term[.]" OCGA § 9-11-67.1(a), (c) (2024).

7

contract, whereby an offer calls for acceptance by an act rather than by communication. So, if an offer calls for an act, it can be accepted only by the doing of the act. And if the recipient of a pre-suit offer fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds.

*Redfearn*, 371 Ga. App. at 657(1) (citation and punctuation omitted). Here, the offer to settle unequivocally conditioned Liberty Mutual's acceptance on its payment of the settlement amount being "received by [Plaintiffs' counsel] forty-five days after the . . . offer is received[.]" While Liberty Mutual could have accepted Plaintiffs' offer under the statutory terms, it agreed to the terms "as presented." Thus, like in *Redfearn*, we must conclude that Liberty Mutual, on behalf of Bonilla, agreed to be bound by this term as a condition of acceptance. Id. at 657-58(1).

2. This conclusion, however, does not end our inquiry, as we must determine whether an agreement to "timely" payment required Liberty Mutual to pay the settlement amount on February 24, 2024, or if the settlement amount could be paid before that date.[3] As noted above, while Plaintiffs' offer required payment on the

---

[3] Plaintiffs ask us to find that Bonilla has waived this argument by failing to argue the same to the trial court. Our review of the record, however, demonstrates that Bonilla argued to the trial court that his insurer "timely delivered a check[.]" As such, we find that this argument has not been waived.

forty-fifth day, the offer went on to provide that "[t]imely payment is a condition of acceptance." The interpretation of an offer is an issue of law for a court. *First Acceptance Ins. Co. of Ga. v. Hughes*, 305 Ga. 489, 493(2) (826 SE2d 71) (2019). We review a trial court's construction of a contract de novo. *Main Street Burger v. Estate of Collier*, 372 Ga. App. 275, 280(2) (904 SE2d 111) (2024).

"In our analysis, we undertake a three-step process in the construction of the contract, the first of which is to determine if the instrument's language is clear and unambiguous. If the language is unambiguous, the court simply enforces the contract according to the terms, and looks to the contract alone for the meaning." *Gen. Sec'y Indemnity Co. of Ariz. v. Gerald Jones Ford, LLC*, 371 Ga. App. 868, 870 (903 SE2d 325) (2024) (citation and punctuation omitted). "However, if contractual language is ambiguous in some respect, the court applies the rules of construction to resolve the ambiguity." *Hughes*, 305 Ga. at 494(2).

Ambiguity exists when a contract contains an uncertain meaning, is duplicitous, and indistinct, or when a word or phrase may be fairly understood in more than one way. On the other hand, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation. Moreover, a court should, if possible,

9

construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms, favoring upholding the contract as a whole, and the whole contract should be looked to in arriving at the construction of any part.

*Main Street Burger*, 372 Ga. App. at 280-81(2) (citations and punctuation omitted). Where ambiguities exist in a contract, this Court must construe the language against the drafter (Plaintiffs) and in favor of the non-drafter (Bonilla). See *Humble v. Opendoor Prop. J*, 373 Ga. App. 210, 213(2) (908 SE2d 57) (2024). We often "turn to dictionaries for the usual and common meaning of terms in a contract." *Wilson v. Clark Atlanta Univ.*, 339 Ga. App. 814, 826(1)(a)(ii) (794 SE2d 422) (2016).

With these principles in mind, we turn to the language of Plaintiffs' offer. The offer required that payment "be received by [Plaintiffs'] firm forty-five days after the date that this offer is received" — in this case, February 24, 2024. The agreement also provided that "[t]imely payment is a condition of acceptance." We agree with the trial court that "[t]he central question here is whether the delivery of the settlement check on [the] 10th day rather than the forty-fifth day constitutes compliance with the precise terms of the demand." First, we must determine what "timely" means within the context of the settlement offer. Since the offer was made in 2024, we can look to

recent dictionaries, which have consistently defined "timely" to encompass acting *early or by* a fixed deadline. See, e.g., *Timely*, Oxford English Dictionary (June 2025), https://doi.org/10.1093/OED/5650086539 ("*Sufficiently early*, in good time; (now chiefly U.S. Law) *by a fixed time* or deadline.") (emphasis added); *Timely*, Merriam-Webster.com Dictionary https://www.merriam-webster.com/dictionary/timely (last accessed December 15, 2025) ("[C]oming *early* or at the right time[.]") (emphasis added). While it is true that a dictionary will not always provide a complete answer, *Gen. Sec'y Indemnity Co. of Ariz.*, 371 Ga. App. at 870, based on the plain meaning of "timely," it was clearly reasonable for Liberty Mutual to interpret the offer to permit early payment.

Pretermitting whether Plaintiffs' offer unambiguously allowed for early payment, if the offer was ambiguous, other canons of construction require this Court to resolve such ambiguity by authorizing early payment. First, if it was Plaintiffs' intention to require payment on a specific Saturday, they could have done so by simply requiring payment be made on that day. See *Pierce v. Banks*, 368 Ga. App. 496, 500-501(2)(b) (890 SE2d 402) (2023) (concluding insurer did not accept an offer to settle under OCGA § 9-11-67.1 after settlement payment was tendered before the period

11

specified when the offer required payment on a specific day). Instead, Plaintiffs chose to additionally provide that "timely" payment was a condition of acceptance. Because we must give effect to all contract terms, and "timely" encompasses acting on or before a specified time to act, we must construe the offer to have authorized Liberty Mutual to tender the settlement check before the deadline. Additionally, if there was any remaining ambiguity as to whether the offer, read as a whole, authorized early payment, this ambiguity must be resolved in Bonilla's favor by concluding that the term "timely" encompasses early payment and Liberty Mutual complied with the settlement offer's precise terms of acceptance when Plaintiffs received the check before the specified deadline.

Plaintiffs' reliance on this Court's recent opinion in *Pierce*, 368 Ga. App. at 496, does not compel a different result. In *Pierce*, an insurer received an offer to settle which required "as an act necessary to accept [the] offer, payment had to be received 15 days after [the insurer's] written acceptance of the offer." Id. at 497(1) (punctuation omitted). As in the instant case, the insurer's written settlement also included the settlement check. Id. We concluded that "it is patent that [the insurer's] purported acceptance failed to comply with the requirements of the offer[.]" Id. at

499-500(2) (punctuation omitted). As distinguished above, however, the offer in *Pierce* required payment on a certain day, while the offer in the instant case, although purportedly requiring payment on a specific date, also included language indicating that "timely" payment is a condition of acceptance. To extend *Pierce* to the facts of this case would be to ignore the plain meaning of the word "timely," or to render its inclusion in the offer meaningless, and we reject Plaintiffs' invitation to do so.

It is also worth noting that the offeror in *Pierce* had a legitimate reason for requiring payment on a specific day. See *Pierce*, 368 Ga. App. at 503 (Dillard, P.J., concurring). Instead, here, the trial court was troubled that there was "no legitimate basis for requiring payment on day forty-five." Additionally, there was no indication from the offer that there would be a mechanism to pay the settlement amount on a Saturday, instead of on an earlier typical business day. As such, while Plaintiffs have the freedom to set the terms of the offer, unlike the insurer in *Pierce*, Liberty Mutual had no reason to read the offer so narrowly as to require payment on a specific Saturday. Therefore, *Pierce* is easily distinguished and does not change our conclusion that Liberty Mutual complied with the acceptance terms as presented.

Because Liberty Mutual precisely performed the conditions of accepting Plaintiffs' offer, the trial court erred in denying Bonilla's motion to enforce the settlement agreement.

*Judgment reversed. McFadden, P.J., and Pipkin, J., concur.*